## A95A2335. LAROCHELLE v. THE STATE.

(466 SE2d 672)

BEASLEY, Chief Judge.

Larochelle was tried on a five-count indictment and was convicted only of one count of trafficking in cocaine through the knowing possession of 400 grams or more. OCGA § 16-13-31 (a) (1) (C). He was sentenced to 25 years' imprisonment and ordered to pay a $1,000,000 fine. His motion for new trial was denied. Among other things, he contends that the five-count indictment was vindictive, that a plea offer was not communicated to him by trial counsel, that the search resulting in the seizure of the cocaine was unlawful, and that the evidence was insufficient to establish his knowing possession of the cocaine.

An earlier indictment charged Larochelle, Blanchard and Altona with one count of trafficking in cocaine and one count of possession of a controlled substance with intent to distribute. After Larochelle had made various pretrial motions and demands, including a motion to suppress, a second indictment was returned against the co-indictees. It charged them with four counts of trafficking in cocaine and one count of possession of a controlled substance with intent to distribute. The first indictment alleged that the amount possessed was 28 grams or more, whereas the second indictment alleged 400 grams or more.

The State moved to disqualify defense counsel due to conflict of interests. This motion averred that Larochelle and Blanchard were both being represented by the same attorney and other members of his law firm, and that a potential conflict existed because the State had made a plea offer in exchange for one defendant's testimony against the other.

At a hearing on the motion, defense counsel objected to the fact that neither Larochelle nor Blanchard was present. Counsel also opposed the State's motion, stating that the prosecution could not create a conflict by extending a plea offer; that this raised the mere possibility of a conflict which could not be used to deprive his clients of their right to counsel of their choice; and that at this stage of the proceeding he could represent both defendants; but that, if the court denied their motion to suppress, he would secure other counsel for one of his clients. Although defense counsel indicated a disinclination to agree to a plea in exchange for testimony against a co-defendant, he acknowledged that it was his obligation to communicate the offer and let the client decide whether to accept. The prosecuting attorney stated she sought an order of nolle prosequi on the first indictment, explaining that, upon review, she had "under-indicted" the case.

The court granted the nolle prosequi order over defendants' objection and subsequently denied the motion to disqualify, on grounds that there was only a mere possibility of a conflict and that if a con-

flict did arise, defense counsel would voluntarily withdraw and assist the defendants in finding alternative counsel. Although the court denied defendants' motion to suppress, the attorney represented both Larochelle and Blanchard at trial.

The evidence showed that on the evening of September 9, 1993, City of Pooler Police Corporal Whitt was patrolling an area of I-95 within the city limits, on special assignment with a drug interdiction task force. That night, a drug dog was doing a walk-around of any cars that Whitt stopped.

The first car was a gray Cadillac driven by Larochelle and occupied by Altona and Blanchard. Through a radar device in his patrol car, Whitt determined that the car was moving 67 mph in a 55 mph zone. Whitt stopped the car and instructed Larochelle to exit it. He discovered that Larochelle's driver's license was suspended, issued him a citation for that offense (but not for speeding), arrested him, and placed him in the patrol car.

After the arrest, Whitt asked Larochelle if there was anything illegal in the car, and he said no. He then asked Larochelle "if he would have any problem if I searched the vehicle and its contents and he gave me permission to do so." Altona and Blanchard were then asked to exit the vehicle. Officer Allen, who had arrived to assist Whitt, testified that Altona and Blanchard also verbally consented to a search of the car. This was confirmed by Whitt. Allen testified that all three suspects appeared to be very nervous.

Deputy Sheriff Lider arrived with the drug dog. As the dog approached the car to do the walk-around, he lunged toward it and went directly toward the glove compartment. Lider and Whitt then discovered coffee granules, which are used to mask the odor of cocaine, leaking onto the car's floorboard from behind the glove compartment. Lider hit the dashboard and something fell from behind it. Whitt reached underneath and felt more coffee grounds. The screws securing the glove compartment appeared to have been tampered with, and the glove compartment was not "factory tight," so the officers removed it. Therein they found cocaine.

Blanchard testified that Larochelle and one of Blanchard's sisters have a daughter. He further testified that two days before the traffic stop, he and Larochelle left Delaware to go to Miami in a car borrowed from another sister. On the return they picked up Altona in Fort Pierce, Florida, after which Blanchard drove until Larochelle took over when they stopped at a gas station in Savannah about three or four miles from where they were stopped by Whitt.

1. Larochelle cites *Lewis v. State*, 101 Ga. 532 (28 SE 970) (1897), in urging error by the court's failure to conduct a de novo investigation before entering the nolle prosequi orders.

OCGA § 17-8-3 allows the prosecuting attorney to enter a nolle

prosequi with the court's consent before the case has been submitted to a jury, but it requires an examination of the case in open court. After the case has been submitted to the jury, a nolle prosequi shall not be entered except by the consent of the defendant.

The court conducted an examination in open court, as required by the statute. *Lewis* does not require anything more, procedurally. In *Lewis*, the defendant's conviction was reversed and a new trial ordered. On remand, the prosecutor sought a nolle prosequi. The defendant argued that since the case had been submitted to the jury already, a nolle prosequi could not be entered except by his consent. The Supreme Court disagreed, holding that "[t]he new hearing brought up the whole case for a de novo investigation; and consequently, it was right for the judge to deal with it as if it had never been tried at all. . . ." *Lewis*, supra, 101 Ga. at 534. Thus, the proceedings began anew.

2. Larochelle contends that the trial court erred in entering the nolle prosequi orders because the reindictment of him was vindictive.

"An indictment obtained without the dismissal of a prior indictment is a superseding indictment. A grand jury is not prevented from returning another indictment against an accused, even though an indictment is pending, where there has been no jeopardy upon the first indictment, and the existence of a prior indictment generally is not grounds for quashing the second indictment, although the state may be required to elect upon which indictment it will proceed." (Footnotes omitted.) 41 AmJur2d, Indictments and Informations, § 54 (1995). However, "[a] reindictment increasing the severity of the charges following the exercise of certain procedural rights may create an appearance of vindictiveness, and where it does so, the burden is shifted to the government to prove that the decision to reindict with more severe charges did not result from any vindictive motive." (Footnotes omitted.) 42 CJS, Indictments and Informations, § 27 (1991).

In *United States v. Goodwin*, 457 U. S. 368, 381 (102 SC 2485, 73 LE2d 74) (1982), the Court held that a presumption of vindictiveness is not warranted where the prosecutor makes a pretrial decision to modify the charges after the defendant has invoked procedural rights such as a motion to suppress and other pretrial demands. In this circumstance, the burden is on defendant to prove that the prosecutor's charging decision was motivated by a desire to punish him for doing something the law allows him to do. See *Goodwin*, supra, 457 U. S. at 384.

The court was authorized to find that Larochelle did not carry this burden.

3. Larochelle contends that he was denied effective assistance of counsel.

After trial, counsel moved for new trial on the general grounds on Larochelle's behalf and moved to withdraw as attorney of record. After the motion for new trial was heard, Larochelle's new attorney filed a "supplemental memorandum" stating that he had spoken with Larochelle and learned that no plea offer made by the State had been communicated to him. He also stated that Larochelle's consent to be represented by the same attorney as his co-defendant was not made a matter of judicial record. Given the potential conflict and the absence of any proof that there was a knowing and intelligent waiver of said conflict, Larochelle claimed ineffective assistance of counsel. Although he also complained that he was not present at the hearing on the motion to disqualify counsel, he has not enumerated error on the court's failure to sustain counsel's objection to his absence.

The trial court determined that Larochelle's ineffective assistance claim was untimely but denied it on its merits. The court found that Larochelle expressly waived any possible conflict of interest resulting from counsel's also representing a co-defendant; that counsel was very effective albeit unsuccessful; and that counsel's dual representation of the co-defendants did not present an actual conflict because both defendants raised the same defense, i.e., that they lacked any knowledge the drugs were hidden in the car.

We do not find any support in the record for the finding that Larochelle expressly waived any conflict resulting from counsel's joint representation. Also, the amendment to his motion for new trial was not untimely because it may be amended any time on or before the ruling thereon. OCGA § 5-5-40 (b). In its order denying Larochelle's motion for new trial, the court did not rule on whether trial counsel informed Larochelle of the plea offer.

"Objective professional standards dictate that a defendant, absent extenuating circumstances, is entitled to be told that an offer to plead guilty has been made and to be advised of the consequences of the choices confronting him. For counsel to do otherwise amounts to less than reasonably professional assistance." (Footnote omitted.) *Lloyd v. State*, 258 Ga. 645, 648 (2) (a) (373 SE2d 1) (1988).

Nevertheless, "[t]he defendant must further show that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' [Cit.] Logically, such prejudice can only be shown by some indication that the defendant was amenable to the offer made by the state. . . . [We are] to examine the facts of each case and grant relief where there is at least an inference from the evidence that the defendant would have accepted the offer as made or something similar." (Footnote omitted.) Id. at (2) (b).

In *Holloway v. Arkansas*, 435 U. S. 475, 489 (8) (b) (98 SC 1173, 55 LE2d 426) (1978), relied on by Larochelle, the Court did recognize that one of the reasons one attorney cannot represent multiple clients

with conflicting interests is because he may well be precluded from exploring possible plea negotiations. See *Ruffin v. Kemp*, 767 F2d 748, 750 (11th Cir. 1985); see also *Baty v. Balkcom*, 661 F2d 391, 397 (9) (5th Cir. 1981). Neither *Holloway, Ruffin*, nor *Baty* goes so far as to hold that the existence of a plea offer creates a conflict of interest requiring the appointment of separate counsel, if the co-defendants are pursuing a common defense and decide to reject the offer.

Through Larochelle's amendment to his motion for new trial, he raised a colorable claim of ineffective assistance of counsel requiring an evidentiary hearing to resolve the issues of whether trial counsel informed Larochelle of the plea offer and, if so, whether Larochelle knowingly and intelligently waived counsel's potential conflict of interest through a decision to reject the offer and continue to pursue his and his co-defendant's common defense. If either question is answered in the negative, the court must resolve a third question, whether Larochelle would have accepted the plea offer made or something similar. An affirmative response to this question requires a new trial.

4. Larochelle contends that the evidence seized should have been suppressed because the stop was pretextual.

First, Larochelle argues that Whitt was not authorized to stop him for speeding because the city ordinance had raised the speed limit on I-95 to 65 mph. However, as found by the trial court, the ordinance provided that the 65 mph speed limit would be effective when appropriate signs were erected, and the signs which were posted at the time and place of this traffic stop indicated a speed limit of 55 mph.

Second, Larochelle argues that even if Whitt was authorized to stop him for speeding, he did not cite him for that offense, and therefore his ulterior motive was to search for drugs. The standard for measuring pretextual stops is not whether the officer's primary motivation for making the stop was to interdict drugs. *State v. Tate*, 208 Ga. App. 117, 120 (430 SE2d 9) (1993), rev'd on other grounds, *Tate v. State*, 264 Ga. 53 (440 SE2d 646) (1994). Rather, it is measured by " ' " ' 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." ' The finding of an improper or even illegitimate motivation does not render the stop an unreasonable one. The validity of the stop depends on what the driver was doing and what that reasonably conveyed to the officer, not on what else the officer thought might be occurring." *Tate*, supra, 208 Ga. App. at 121. Defendant's speeding authorized the initial stop. *Schmidt v. State*, 188 Ga. App. 85, 86 (372 SE2d 440) (1988); see *Moon v. State*, 194 Ga. App. 777, 778 (1) (392 SE2d 19) (1990).

5. Larochelle contends that he did not voluntarily and freely consent to the search and that the search exceeded the scope of any consent given. The trial court's findings in these regards must be accepted as they are not clearly erroneous. See, e.g., *Moon*, supra, 194 Ga. App. at 777 (1).

6. The next question is whether the court erroneously charged the jury that it could presume that Larochelle possessed all property in the car, and Larochelle challenges the sufficiency of the evidence to establish beyond a reasonable doubt that he was in knowing possession of the cocaine.

The court charged the jury that if a person is driving an automobile or has an automobile in his possession, custody or control, it might infer, if it wished to do so, that all property in the automobile was in his possession, but that the inference could be rebutted. The court also charged the jury that if it found that other people besides defendants had equal access or an equal opportunity to place the contraband in the automobile, the jury should acquit the defendants unless it was shown beyond a reasonable doubt that defendants knowingly possessed the contraband or shared possession or control of it with some other person and aided and abetted or procured the other person to possess the contraband and have it under his control.

Larochelle argues that this charge was not authorized by the evidence, in that he had just taken over the responsibility of driving, and other people (i.e., the owner of the automobile, Blanchard, and Altona) had equal access. However, the evidence showed that both Larochelle and Blanchard had been in joint possession of the vehicle for two days prior to discovery of the cocaine, and that Altona did not join them until they arrived in Fort Pierce en route back to Delaware. Under these circumstances, it cannot be said that Altona had equal access to cocaine in a secret compartment of the car not accessible to passengers. Moreover, there was additional circumstantial evidence authorizing the jury to find that although Larochelle and Blanchard were using a borrowed car, they were in knowing joint or constructive possession of the cocaine. Accordingly, the court did not err in charging the jury on the rebuttable presumption. See *Fears v. State*, 169 Ga. App. 172 (1) (312 SE2d 174) (1983).

The jury found, as it was legally authorized to do, that the presumption had not been overcome by Larochelle. *Spurlin v. State*, 168 Ga. App. 16, 18 (2) (308 SE2d 39) (1983); compare *Hughes v. State*, 215 Ga. App. 6 (449 SE2d 547) (1994); *Whipple v. State*, 207 Ga. App. 131 (1) (427 SE2d 101) (1993). Viewed in a light most favorable to the verdict, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Larochelle was in knowing possession of the cocaine.

7. The last enumeration is that the court erred when it failed to

charge the jury on the presumption of innocence at the end of the trial. The transcript shows that when the trial began, the court gave a preliminary instruction on the presumption of innocence, and the court reiterated this principle when it gave its general charge. Compare *Griffith v. State*, 264 Ga. 326 (2) (444 SE2d 794) (1994).

The judgment of conviction and sentence are affirmed, but the order denying Larochelle's motion for new trial is vacated and the case remanded for a hearing on the ineffective assistance claim raised by him.

*Judgment affirmed in part and vacated in part and case remanded. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 5, 1996 — ▮▮▮▮▮▮▮▮▮

*Randall A. Schmidt*, for appellant.

*Spencer Lawton, Jr.*, District Attorney, *Michael K. Dennard, Assistant District Attorney*, for appellee.