## A05A1046. FERNANDEZ v. THE STATE.
## A05A1047. ESPARZA v. THE STATE.
(619 SE2d 821)

ELLINGTON, Judge.

A Carroll County jury found Hector Fernandez (a.k.a. Hector Garza) and Delia Esparza guilty of trafficking in over 400 grams of cocaine, OCGA § 16-13-31 (a) (1) (C). Fernandez and Esparza appeal from orders denying their motions for new trial. They both contend the evidence adduced at trial was insufficient to support the verdicts and that the trial court erred in denying their motion to suppress the cocaine evidence seized. Fernandez also contends he was denied the effective assistance of counsel. Because these appeals arise from the same criminal trial and involve the same facts and overlapping legal issues, we consolidate them.

Viewed in the light most favorable to the jury verdicts,[1] the record reveals the following. At around 11:20 a.m. on February 6, 2001, a Villa Rica sheriff's deputy saw a green Ford Explorer moving along Interstate 20 in Carroll County. The driver of the Explorer was rubbing his face and head, as if extremely fatigued, and a young child was bouncing around in the back seat, unrestrained. The deputy followed the car. He saw the car's California license plates. He observed the driver, who continued to rub his face, weave out of his lane. The deputy also noticed that neither the driver nor his front seat passenger wore safety belts. The deputy made a traffic stop based upon the seat belt and failure to maintain lane violations he witnessed.

The deputy walked to the front passenger side of the Explorer to speak with the driver, Fernandez, and his passenger, Esparza. As the deputy asked Fernandez for his license and registration, he saw a third adult, Louis Garcia, lying down in the back seat. The deputy noticed that Esparza's carotid artery had begun visibly pulsing and that she seemed very nervous. She also broke out in hives. The deputy told Fernandez that he stopped the car because Fernandez seemed

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

tired, because Fernandez had failed to maintain his lane, and because the deputy had witnessed a violation of the seat belt law.

During this exchange, the child in the back seat interjected himself into the conversation in a manner the deputy described as unusually friendly and distracting. The deputy testified the car reeked of freshly sprayed perfume, of fabric softeners, and of the many pine tree-shaped, cardboard air fresheners hanging throughout the car and wedged into the molding of the floorboards. Fast food wrappers were littered throughout the car. Three cell phones were plugged into the dash charger.

The deputy asked Fernandez to step to the back of the Explorer while he wrote up warnings for the traffic violations. Fernandez produced a driver's license from the state of Washington, but he could not produce the vehicle's registration papers. In fact, neither Fernandez nor Esparza could tell the deputy to whom the car belonged, although Fernandez said "a friend" had loaned it to them. Fernandez said he was going to Atlanta to look for work. Esparza and the other passenger claimed to be on vacation. Considering the length of the trip from California to Atlanta and the number of people in the car, the deputy thought it peculiar that the car contained so little luggage. He began to suspect that the car was either stolen or was being used to transport contraband. The deputy testified that he had seen several Ford Explorers and similar cars used for smuggling because they could be modified to accommodate secret compartments. Also, he testified that California was a known source for illegal drugs brought into Atlanta.

The videotape reveals that, at the beginning of the traffic stop, both the deputy and Fernandez communicated in English. Fernandez responded quickly and appropriately, in English, to the deputy's questions. In fact, Fernandez laughed when the deputy made a joke about how well the car's radio worked. As the interview progressed and as the deputy began asking questions about the purpose of the trip, Fernandez seemed to lose his ability to communicate in English. He began pacing, staring into the video camera in the patrol car, and adjusting his jacket repeatedly. The deputy, who had some personal and professional training in speaking the Spanish language, accommodated Fernandez by switching to Spanish.

The deputy finished writing the warning citations for the traffic violations he had observed and returned Fernandez's license to him. Concerned about the lack of information on the car's owner, the deputy walked back to the passenger side of the car and asked Esparza if she had any registration documents. She produced some papers from the glove compartment, but none resolved the question of the car's ownership. The deputy then asked Fernandez, in Spanish, if there were any guns or drugs in the car and Fernandez said "no."

The deputy asked in Spanish for consent to search ("buscar") the truck for drugs ("drogas"), which Fernandez granted, gesturing toward the car. Six minutes elapsed between the time the deputy pulled Fernandez over and the time he asked for permission to search.

The deputy asked everyone in the car to step out so he could search. Just before the deputy began his search, Esparza darted back to the passenger side to grab her purse. For his safety, the deputy looked in the purse. He saw another cell phone and a large bulb of garlic. The deputy told Esparza to stand aside and not to use her telephone. When all the passengers were away from the car, the deputy began his search.

The deputy observed that the floorboards in the rear of the car appeared to have been modified, raised up about an inch. The molding around the edges had been cut loose, as if to accommodate the modification. Yet the carpet, which is normally loose, had been glued down. The deputy also saw evidence that "bondo" and fresh paint had been applied to the floorboards. When the deputy looked underneath the car, he saw a sealed compartment attached to the undercarriage. When he tapped the compartment, it made a heavy, thudding sound, not a metallic, hollow sound.

The deputy got an electric drill from his patrol car and drilled a hole through the floorboards of the Ford Explorer and into the compartment. When he pulled the drill bit out, he noticed a white powdery substance that appeared to be cocaine and which had a strong odor. As soon as the deputy discovered the substance, Esparza tried to make a telephone call. At that point, the officer placed everyone under arrest. Officers later removed 33 kilos (32,560 grams) of 81 percent pure cocaine from the hidden compartment.

Fernandez and Esparza both denied knowing the cocaine was present in the car. After her arrest, Esparza told an investigator she was traveling from California with Fernandez, her boyfriend of two months, for a weekend vacation in Atlanta. She later admitted she had just met Fernandez and did not know his address. She said they left California late Friday and intended to be back home on Monday or Tuesday, although she admitted the trip had already taken three days to go one way. She said they had been driving almost continuously, stopping only to sleep at rest stops. When Esparza was arrested, she had $100 in her purse.

Fernandez told the investigator he was traveling to Atlanta to do roofing work. He was unable, however, to produce any contact information for prospective employers in Atlanta. Fernandez said he met Esparza 15 days before the trip began. He admitted that a man named Molano paid him $200 to drive the car to Atlanta and would give him another $500 upon arrival. Fernandez explained that he was supposed to receive a call on one of the cell phones when he arrived in

Atlanta and that the caller would tell him where to deliver the Explorer. During his custodial interview, Fernandez got three calls on one of the cell phones. The calls made him extremely nervous. The first call was brief and ended in the caller hanging up. During the second call, the caller asked many questions Fernandez appeared reluctant to answer, as if, according to the investigator, he was stalling or trying to tip off the caller. Fernandez cut the second call short by hanging up. Fernandez also ended the third call by abruptly hanging up, but the investigator could hear the caller asking where the others were, including "the woman" who was traveling with them.

The investigator discovered that the Explorer was registered to Antunio Giovani Molano of California, who was notified that the car had been seized in Georgia. Molano never claimed it.

1. Both Fernandez and Esparza contend the trial court erred in denying their pre-trial motion to suppress the cocaine evidence seized. The record reveals that upon the State's tendering the cocaine at trial, the appellants' attorneys each affirmatively stated they had "no objection" to its admission. As we have held, "[w]hen a motion to suppress has been filed, merely failing to object to the admission of the evidence does not constitute a waiver of the grounds asserted in the motion. However, affirmatively stating there is no objection in effect concedes the point." (Punctuation and footnotes omitted.) *Crenshaw v. State*, 248 Ga. App. 505, 508 (2) (546 SE2d 890) (2001). See also *Monroe v. State*, 272 Ga. 201, 204 (6) (528 SE2d 504) (2000) (accord).

2. Both Fernandez and Esparza raise the general grounds. Specifically, they contend the evidence adduced was insufficient to prove they were in "knowing" possession of the cocaine, as required by OCGA § 16-13-31 (a) (1). We disagree. It has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband. E.g., *Larochelle v. State*, 219 Ga. App. 792, 797 (6) (466 SE2d 672) (1996) (evidence authorized jury to find both defendants were in knowing joint or constructive possession of cocaine concealed in secret compartment); *Fields v. State*, 114 Ga. App. 423 (151 SE2d 546) (1966) (circumstances sufficient to show defendant knowingly possessed illegal whiskey hidden in shed on business premises). OCGA § 16-2-6 provides that a jury may find criminal intention "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."

That Fernandez and Esparza knew the car had a secret compartment that contained cocaine could be inferred from the circumstances. Fernandez and Esparza gave conflicting stories about their relationship and their travel plans. A jury could infer that one or both

were lying and that these lies evidenced guilty knowledge. The jury could also infer that the appellants had known each other a very short time and that strangers would not drive across the country together unless they had a strong motivation to do so. A weekend vacation from California to Georgia makes little sense when, as Esparza conceded, the drive one way took several days. And Fernandez was not able to substantiate his claim that he was going to Atlanta for roofing work. Fernandez eventually admitted that his true purpose in driving to Atlanta was to deliver the car for Molano, the "friend" whose identity he initially kept concealed. Molano, the person to whom the car was registered, paid Fernandez $200 of a $700 fee for his services. Esparza had $100 in her purse, half of the amount Fernandez had already been paid. A jury could infer that Esparza was paid to accompany Fernandez, to give him the appearance of being a family man on vacation.

Further, the car was littered with fast food wrappers and Esparza admitted they had been driving almost continuously, only stopping to sleep at rest areas. A jury could infer they were in a hurry to deliver contraband they could not leave unattended. The car reeked of perfume and air fresheners and Esparza had a bulb of garlic in her purse. A jury could infer that the mix of strong odors was to hide the odor of cocaine or to confuse a drug dog. Fernandez and Esparza had many cell phones, one of which was given to them by the car's owner so that they could receive instructions when they arrived in Atlanta. A jury could infer that if they were simply delivering a car, there was no need to be so covert. A jury could also infer from Fernandez's consent to search that he was confident the police would not discover the hidden compartment. When the compartment was discovered, Esparza attempted to make a phone call even though she had been ordered by police not to do so. The jury could infer she was attempting to warn her employers. Finally, both Fernandez and Esparza showed signs of extreme nervousness; Esparza even broke out in hives. Based on these circumstances, a jury could infer they had guilty knowledge of the 33 kilos of cocaine hidden beneath their car and that they feared prosecution, retribution from their employer, or both.

This evidence was sufficient to support the jury's verdict beyond a reasonable doubt that Fernandez and Esparza knowingly possessed the cocaine concealed in the hidden compartment. See *Larochelle v. State*, 219 Ga. App. at 797 (6) (evidence authorized jury to find that both defendants were in knowing joint or constructive possession of cocaine concealed in secret compartment).

3. Fernandez contends he was denied the effective assistance of trial counsel because his attorney (a) failed to convey to him accurately the substance of a plea offer he claims he would have accepted

and (b) waived any objections to the allegedly illegal search that resulted in the seizure of the cocaine admitted at trial. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced him or her that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 782-783 (1) (325 SE2d 362) (1985). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577, 578 (523 SE2d 9) (1999). The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous. *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996).

(a) With respect to the guilty plea, Fernandez admitted during the motion for new trial hearing that his attorney informed him of the State's plea offer of fifteen years to serve five, the balance probated, on a lesser charge of possession with intent to distribute. However, Fernandez argued that his attorney misled him into believing he would have to serve all 15 years in jail, which is why he rejected the plea offer. The attorney testified that he explained to Fernandez at least six times, both in English and in Spanish through an interpreter, the details of the offer, that he would only serve five years, and that Fernandez understood. Fernandez testified that he realized by electing to go to trial he risked a sentence of 25 years. The attorney testified that Fernandez refused to accept any plea, that he wanted to "go along with the other two [defendants]," who also refused the offer. The attorney testified that Fernandez maintained his innocence, contending he was unaware of the cocaine in the secret compartment.

Because the court had evidence before it, albeit conflicting, that trial counsel fully and accurately informed Fernandez of the details of the plea offer and the risks of going to trial, but that Fernandez nevertheless knowingly chose to reject the plea, the trial court was authorized to conclude that Fernandez failed to carry his burden of proving, by a preponderance of the evidence, that counsel's performance was deficient in this respect. *Lowe v. State*, 241 Ga. App. 335, 337 (3) (526 SE2d 634) (1999).

(b) With respect to the motion to suppress, Fernandez contends his attorney was ineffective because he failed to preserve his objections to the legality of the search that resulted in the seizure of the cocaine evidence admitted against him at trial. When urging ineffective assistance of counsel on the basis of counsel's failure to preserve the right to appeal from the denial of a motion to suppress evidence, appellant must show that, had the suppression issue been preserved,

the appellate court would have found it meritorious and reversed the conviction on that basis. Cf. *Martin v. State*, 266 Ga. App. 392, 393-394 (3) (597 SE2d 445) (2004) ("When urging ineffective assistance of counsel on the basis of counsel's failure to file a motion to suppress, appellant must make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed.") (citation and punctuation omitted).

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Citation and punctuation omitted.) *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995). But where the evidence is uncontroverted, and no question about the credibility of witnesses is presented, the trial court's application of law to the undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). The facts relevant to our review are recounted in the paragraphs preceding Division 1.

(i) Fernandez contends his consent to search the Ford Explorer was the product of an unlawful detention. He argues that the deputy illegally detained him after the traffic stop had ended and questioned him about criminal matters for which the deputy lacked reasonable articulable suspicion.

"[A] police officer, having effected a valid stop of a vehicle, does not violate a driver's Fourth Amendment rights merely by inquiring about his possession of weapons or drugs or requesting his consent to search his vehicle for those weapons or drugs." (Citation omitted.) *State v. Mauerberger*, 270 Ga. App. 794, 795 (608 SE2d 234) (2004). "[I]t is not the nature of the question that offends the Fourth Amendment, it is whether in asking the questions the officer impermissibly *detains* the individual beyond that necessary to investigate the traffic violation precipitating the stop." (Citation and punctuation omitted; emphasis in original.) Id.

In this case, the officer stopped Fernandez because Fernandez appeared fatigued, failed to maintain his lane of travel, was not wearing his seat belt, and had an unrestrained child bouncing around in the back seat of his car in violation of the seat belt law. The seat belt violations were sufficient to authorize the stop. OCGA § 40-8-76.1 (e) (3), (f). Further, the evidence does not support Fernandez's contention that the traffic stop had ended when the deputy asked for consent to

search or that Fernandez had been subjected to unreasonable, prolonged questioning about contraband. Fernandez had been detained only six minutes when the deputy asked for consent to search. And when the deputy asked for that consent, he was still in the process of trying to determine who owned the car. "An officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents." (Citations omitted.) *Temples v. State*, 228 Ga. App. 228, 231 (491 SE2d 444) (1997). While the deputy attempted to find out who owned the car, he asked Fernandez whether he had been drinking, whether there were any weapons or drugs in the car, and whether he would consent to a search of his car for drugs. Here, the deputy's questions did not unreasonably detain Fernandez beyond the time necessary to investigate the traffic stop, write up the warnings, and determine who owned the car. See *State v. Mauerberger*, 270 Ga. App. at 795.

(ii) Fernandez contends that he did not voluntarily consent to the search of his vehicle. He argues that he misunderstood the deputy's Spanish, and that the deputy only asked him "to look" in the truck, not to search through its contents for drugs.

For a consent to search to be effective, it must be voluntarily given. See *Schneckloth v. Bustamonte*, 412 U. S. 218, 222 (93 SC 2041, 36 LE2d 854) (1973). As the Supreme Court of Georgia has held:

> When relying on the consent exception to the warrant requirement, the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances. Application of the totality of the circumstances test requires consideration of several factors, including the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

(Citations omitted.) *State v. Tye*, 276 Ga. 559, 560 (1) (580 SE2d 528) (2003). Fernandez does not contend that his age, education, or intelligence impaired his ability to voluntarily consent. Further, it is clear from the videotape that Fernandez was detained briefly, that the environment was not coercive, that the deputy was polite, and that the deputy's request to search was a request, not a demand. Rather, Fernandez contends that he understood, based on the deputy's poor Spanish, that he was only allowing the deputy "to look" inside the Explorer, not "to search" its contents thoroughly, and that the deputy failed to inform him in Spanish that he was free to refuse the request.

In this case, the deputy testified that he asked Fernandez, in Spanish, for consent to search the car for drugs. The deputy said he used the Spanish word "buscar," which he was taught was the word to use when asking for permission "to search."[2] Our review of the video reveals that the deputy did indeed use the word "buscar" when asking to search the truck for drugs, "drogas."[3] Fernandez appeared to understand the meaning of this question because he said "si," nodded his head affirmatively, made a "go ahead" gesture with his hands, and stepped back to allow the deputy to proceed with a search. Further, when the deputy began searching through the car, Fernandez made no sign or sound of protest to indicate that the deputy was doing something beyond what was authorized. Consequently, we find there was sufficient evidence[4] before the trial court to authorize a finding that Fernandez consented to "a search" of the Explorer.

Finally, although the deputy did not advise Fernandez that he had a right to refuse the request to search, we conclude the trial court's finding that the consent was voluntary was not clearly erroneous given the totality of the circumstances. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." (Citation and punctuation omitted.) *State v. Tye*, 276 Ga. at 560 (1). "Instead, the totality of the circumstances must control, without giving extra weight to the absence of this type of warning." (Citation and punctuation omitted.) Id. at 560-561 (1).

(iii) Fernandez argues that the deputy's use of a drill to penetrate the hidden compartment beneath the floorboard exceeded the scope of his consent to search the interior of the car and was, therefore, illegal. Pretermitting whether causing damage to the Explorer exceeded the scope of the consent given,[5] the deputy was nevertheless authorized to use the drill to penetrate the compartment under the circumstances presented. Based on the deputy's observations both before and during the search of the car, he had probable cause[6] to

---

[2] See, e.g., *United States v. Melendrez-Moreno*, 126 Fed. Appx. 919, 921 (2005) ("Although[ ] the form did not use the word *buscar*, Spanish for search, Officer Trujillo used that verb when he explained the purpose of the form.").

[3] See, e.g., *United States v. De La Cruz*, 420 F2d 1093, 1095 (7th Cir. 1970) (" 'Drogas' is the Spanish word for 'drugs.' ").

[4] Although an interpreter who was employed by and on behalf of the third co-defendant, Garcia, opined that the deputy only asked for permission "to look" or "to see" inside his car, we found nothing in the record establishing that the interpreter's testimony was given under oath.

[5] See *New Mexico v. Garcia*, 127 N.M. 695, 698 (986 P2d 491) (1999) ("[W]hen the search involves intentional damage to property, the courts require more certain evidence that the scope of the consent extended that far.").

[6] The test of probable cause "requires merely a probability—less than a certainty but more than a mere suspicion or possibility." (Citation and punctuation omitted.) *Brown v. State*, 269 Ga. 830, 831 (2) (504 SE2d 443) (1998). In the instant case, the deputy knew the car had a hidden

believe there was contraband in the secret compartment he observed, thus lawfully expanding the scope of the search to that allowed under the automobile exception to the warrant requirement. See *United States v. Ross*, 456 U. S. 798, 809 (102 SC 2157, 72 LE2d 572) (1982); see also *Benton v. State*, 240 Ga. App. 243, 245 (2) (522 SE2d 726) (1999).

Simply stated, in cases where there is probable cause to search a vehicle for contraband, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained. *Benton v. State*, 240 Ga. App. at 245 (2). The automobile exception has no separate exigency requirement. Id. Further, when an officer has probable cause to believe a sealed compartment in an automobile contains contraband, he may lawfully search it "including dismantling [it] or damaging it." (Citation omitted.) *United States v. Alverez*, 235 F3d 1086, 1089 (II) (A) (8th Cir. 2000) (officer permitted to slash a spare tire that made a thudding sound when shaken, as if full of contraband); *United States v. Martel-Martines*, 988 F2d 855, 858-859 (II) (8th Cir. 1993) (Officers had probable cause to conduct a warrantless search of a hidden compartment by punching a hole into it.).

Because Fernandez has not shown a reasonable likelihood that we would have reversed the trial court's order denying his motion to suppress, Fernandez has not carried his burden of showing he was prejudiced as a result of his attorney's failure to preserve any claim of error arising from that order. Cf. *Martin v. State*, 266 Ga. App. at 393-394 (3) (no prejudice shown in failing to file motion to suppress). Consequently, Fernandez's claim of ineffective assistance of counsel fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 17, 2005.

*Kevin W. Drummond*, for appellant (case no. A05A1046).
*Gerald P. Word*, for appellant (case no. A05A1047).
*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.

---

compartment that was not empty, that the car was being driven straight through from California, a known drug source, that the driver and passenger were very nervous and gave conflicting and suspicious stories, that the driver would not identify the car's owner, and that the car reeked of air fresheners.