A10A0558. LOTT v. THE STATE.
A10A0559. WATSON v. THE STATE.

(694 SE2d 698)

BLACKBURN, Presiding Judge.

Following a jury trial, co-defendants Henry Kelvin Lott and Linda Watson were convicted on one count of trafficking in cocaine[1] and one count of possession of marijuana with intent to distribute.[2] Lott was also convicted by the same jury on one count of possession of hydrocodone.[3] Both appeal their convictions and the denial of their respective motions for new trial, arguing that the evidence was insufficient to support their convictions and that the trial court erred in denying their motions to suppress evidence seized by means of an allegedly unlawful search warrant. In addition, Lott contends that the trial court erred in failing to find that his trial counsel rendered ineffective assistance, and Watson argues that the court erred in allowing hearsay testimony. Because the charges arose from the same incident and the appellants were tried together, we have consolidated their separate appeals for review. For the reasons set forth below, we affirm in both cases.

1. We first address Lott's and Watson's challenge to the sufficiency of the evidence supporting their convictions. "On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict and [appellants] no longer enjoy[ ] a presumption of innocence." (Punctuation omitted.) *Dennis v. State.*[4] In evaluating the sufficiency of the evidence to support a conviction,

---

[1] OCGA § 16-13-31 (a).
[2] OCGA § 16-13-30 (j) (1).
[3] OCGA § 16-13-30 (a).
[4] *Dennis v. State,* 294 Ga. App. 171 (669 SE2d 187) (2008).

we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendants guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[5] Additionally, "[o]n appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction." (Punctuation omitted.) *Terry v. State*.[6]

So viewed, the record shows that in March 2006, an undercover officer with the Gwinnett County Police Department had a confidential informant set up a drug deal between the officer and a drug dealer named Jesus Motta. On March 9, 2006, the undercover officer met Motta and Motta's girlfriend at a local gas station and told Motta that he wanted to buy an ounce of cocaine. Motta told the undercover officer that he did not have that amount of cocaine in his possession but that if the officer gave him $1,400, he would go and get it for him. Ultimately, the undercover officer agreed to give Motta $700 for half an ounce of cocaine, and Motta told the officer that he would meet him back at the gas station in about an hour.

As Motta and his girlfriend left the gas station in Motta's vehicle, an undercover police surveillance team followed them. The surveillance team followed Motta to the Carver Circle neighborhood and observed him as he parked his vehicle and approached a group of people who were in front of a house at 161 Carver Circle. However, based on their knowledge that the neighborhood was one known for illegal drug sales, the officers in the undercover surveillance team feared that they would be recognized as police officers if they stopped their vehicle to maintain constant surveillance of Motta. Consequently, the surveillance officers did not stop but drove past the house that Motta had approached. Eventually, they parked off a main road, not far from where Carver Circle emptied into that road, and waited. About 15 minutes later, the surveillance team observed Motta's vehicle exit Carver Circle onto the main road and proceed back toward the gas station.

Upon Motta's return to the gas station, he and the undercover officer got into the officer's vehicle, where Motta produced the cocaine. At that point, officers in the surveillance team arrested Motta. After being read *Miranda* warnings, Motta informed the officers that he bought the cocaine from a man known as "Boogie." He also agreed to show the police where he bought the cocaine and in doing so, directed them back to the house at 161 Carver Circle, where the surveillance team had previously followed him. Motta

---

[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).
[6] *Terry v. State*, 293 Ga. App. 455 (667 SE2d 109) (2008).

again told the officers that Boogie and Boogie's wife sold drugs out of the property and that he had bought marijuana there on several occasions. Motta's girlfriend also independently confirmed that 161 Carver Circle was where Motta bought the cocaine.

Based on the information provided by Motta and the surveillance of him, the day after Motta's arrest, the police obtained a "no-knock" warrant to search the house at 161 Carver Circle for cocaine and the money given to Motta by the undercover officer. In the early evening hours of March 16, 2006, a team of police officers executed the search warrant, forcing their way through the front entrance of the house by using a battering ram. Upon entering the house, the police observed Lott and several other individuals sitting in the living room, and observed Watson running toward one of the back bedrooms while screaming to ask why the house was being raided. All the individuals found inside the house were initially detained. In searching Lott, the officers found a key to the house and a bottle containing hydrocodone pills, which had been prescribed to someone else. Additionally, after everyone had been detained, a man in the crowd of onlookers that had gathered in the street in front of the house asked one of the officers to "tell Boogie to call his brother." When the officer subsequently yelled, "Boogie, call your brother" to those who had been detained, only Lott responded, "Okay."

Thereafter, the officers began searching the entire house. In the right back bedroom, the officers found an air mattress and men's clothing. In the left back bedroom, to which Watson had been running when the police entered the house, the police found a black gym bag, containing large amounts of marijuana and crack cocaine and over $700 in cash. The bag also contained keys to the house and keys to a Jeep Cherokee, which was parked at the house and registered to Watson's son. For several days before the warrant was executed, an officer had seen the vehicle parked at the house and had also seen Watson driving it. In the same bedroom, the officers found women's beauty products, Watson's wallet, which was on the bed and which contained over $1,300 in cash, and photographs, which appeared to have been taken inside the house and which depicted Lott and Watson posing with large amounts of fanned out cash. Additionally, the officers found a yellow notebook, which had writing indicating that it was owned by an individual named "Black" and which appeared to contain records of numerous drug sales. At the same time, an officer, who had confiscated Watson's cell phone while she was being detained, noticed that there was a photograph of Lott with the name "Black" next to it in the cell phone's contacts list.

Lott and Watson were jointly indicted on one count of trafficking in cocaine and one count of possession of marijuana with intent to distribute. In the same indictment, Lott was also charged with one

count of illegal possession of hydrocodone. Both Lott and Watson filed motions to suppress the evidence that the police found during their search of the house at 161 Carver Circle on the ground that the search warrant was invalid. After a hearing in which only the officer who completed the supporting affidavit testified, the trial court denied the motions.

At trial, several of the officers involved in the case testified regarding their investigation and arrest of Lott and Watson. In addition, GBI forensic chemists testified that the contraband found by the police at 161 Carver Circle included 28.3 grams of marijuana packaged in 16 separate bags and 54.15 grams of cocaine with a purity level of 85 percent. Another GBI forensic chemist testified that the pills in the prescription bottle found in Lott's pocket tested positive as hydrocodone. At the close of the State's case, Lott and Watson moved for a directed verdict of acquittal, which the trial court denied.

During the defense's case, the owner of the home at 161 Carver Circle testified that he had leased the property to a woman named Iris Cody but that she had not paid rent or been seen since the police executed the search warrant. The defense also called Motta as a witness, who testified that Lott was not the person he knew as Boogie and that Lott did not sell him the cocaine on the day that Motta was arrested by the undercover officers. Nevertheless, at the trial's conclusion, the jury found both Lott and Watson guilty on all counts of the indictment. Subsequently, both Lott and Watson filed motions for new trial, which the trial court denied after a hearing. These appeals followed.

Lott and Watson contend that the evidence was insufficient to support their convictions of trafficking in cocaine and possession of marijuana with intent to distribute. Specifically, they argue that the evidence was insufficient to prove that they knowingly possessed the cocaine and marijuana, as required by OCGA §§ 16-13-31 (a) and 16-13-30 (j) (1). We disagree.

"Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing." (Citation and punctuation omitted.) *Jackson v. State*.[7] We note that

> it is general law in this [S]tate that merely finding contra-
> band on premises occupied by defendant is not sufficient to
> support a conviction if it affirmatively appears from the
> evidence that persons other than the defendant had equal

---

[7] *Jackson v. State*, 284 Ga. App. 619, 620 (1) (644 SE2d 491) (2007).

opportunity to commit the crime. Presence at the scene of a crime and nothing more will not support a conviction.

(Punctuation omitted.) *Riley v. State*.[8] However, "[b]oth knowledge and possession may be proved, like any other fact, by circumstantial evidence." (Punctuation omitted.) *Abernathy v. State*.[9] "It has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband." *Fernandez v. State*.[10] See also *Larochelle v. State*.[11] Indeed, OCGA § 16-2-6 provides that a jury may find criminal intention "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." "As long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact." (Punctuation omitted.) *Wright v. State*.[12]

Here, although neither Lott nor Watson owned or rented the house at 161 Carver Circle, there was evidence suggesting that they were staying there in that both had keys to the house, and both were depicted in photographs that appeared to have been taken inside the house. When the police forced their way into the home to execute the search warrant, they observed Watson running back toward the bedroom where the cocaine and marijuana was found, while screaming at the police for raiding the house. In the bedroom where the drugs were located, the police found Watson's wallet, which contained over $1,300, keys to the vehicle that Watson had been seen driving, and women's beauty products. The officers also found a notebook containing records of drug transactions in that same bedroom and evidence in Watson's cell phone contacts list indicating that the notebook belonged to Lott. Furthermore, Motta told the police that he bought the cocaine from a man named Boogie, and Lott answered to that name at the time of his arrest. Based on this circumstantial evidence, the jury could infer that Lott and Watson had constructive possession of the drugs found in the house. See *Riley*, supra, 292 Ga. App. at 206 (2) (evidence supported possession for trafficking conviction even where defendant did not own residence where drugs were found); *Sherrer v. State*[13] (same).

---

[8] *Riley v. State*, 292 Ga. App. 202, 205 (2) (663 SE2d 835) (2008).

[9] *Abernathy v. State*, 278 Ga. App. 574, 578 (1) (630 SE2d 421) (2006).

[10] *Fernandez v. State*, 275 Ga. App. 151, 154 (2) (619 SE2d 821) (2005).

[11] *Larochelle v. State*, 219 Ga. App. 792, 797 (6) (466 SE2d 672) (1996).

[12] *Wright v. State*, 279 Ga. App. 299 (1) (630 SE2d 774) (2006).

[13] *Sherrer v. State*, 289 Ga. App. 156, 159-160 (2) (656 SE2d 258) (2008).

Lott and Watson further argue that the evidence did not support the jury's finding that they possessed the drugs found in the bedroom of the house because others in the residence had equal access. However,

> [w]hile the fact that others had equal access to the drugs may inculpate them, such evidence does not automatically exculpate [Lott and Watson]. Instead whether the evidence that others had access to the contraband was sufficient to rebut the evidence that [Lott and Watson were] in possession of the drugs was properly reserved for the jury.

(Punctuation omitted.) *Riley*, supra, 292 Ga. App. at 207 (3). See *Castillo v. State*.[14] Accordingly, there was sufficient evidence for the jury to find Lott and Watson guilty of the charged offenses beyond a reasonable doubt.

2. Lott and Watson contend that the trial court erred in denying their motions to suppress the evidence seized by police during their search of the house, arguing that the search warrant should not have been issued because the police officer's affidavit supporting the warrant did not provide probable cause. We disagree.

"When a defendant moves to suppress evidence based on an illegal search, the State bears the burden of proving that the search was lawful." *State v. Brantley*.[15] "In reviewing a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the court's findings and judgment." *Walthall v. State*.[16] Where "the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*.[17] See *Brantley*, supra, 264 Ga. App. at 152.

"In determining whether an affidavit provided probable cause for the issuance of a search warrant, the Supreme Court in *Illinois v. Gates*[18] adopted the totality of the circumstances test, which was subsequently adopted by the Supreme Court of Georgia in *State v. Stephens*."[19] *Roberson v. State*.[20] Under this analysis,

> the issuing magistrate or judge must make a practical,

---

[14] *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007).
[15] *State v. Brantley*, 264 Ga. App. 152 (589 SE2d 716) (2003).
[16] *Walthall v. State*, 281 Ga. App. 434, 437 (2) (a) (636 SE2d 126) (2006).
[17] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[18] *Illinois v. Gates*, 462 U. S. 213, 238 (III) (103 SC 2317, 76 LE2d 527) (1983).
[19] *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984).
[20] *Roberson v. State*, 246 Ga. App. 534, 536 (1) (540 SE2d 688) (2000).

common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

(Punctuation omitted.) *Evans v. State*.[21] "A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." *DeYoung v. State*.[22]

In this matter, the investigating officer, who obtained the search warrant, provided the magistrate with an affidavit describing the undercover officer's interaction with Jesus Motta, in which the officer gave Motta money to buy cocaine for him, and describing the police's surveillance of Motta driving to 161 Carver Circle and meeting with people in front of the house at that address. The affidavit, in pertinent part, stated:

While still being followed Motta then drove to 161 Carver Circle, Lawrenceville, GA 30045 (Gwinnett County). Sgt. J. Fetner observed Motta pull into the driveway to the left of 160 Carver Circle. Motta got out and was met in the front yard by several other subjects. Due to the area being an area known for illegal drug sales there was a lot of people walking around and it was impossible for Sgt. J. Fetner to keep constant surveillance on Motta who was in possession of the Gwinnett County Funds.

Approximately thirty minutes later Motta was observed driving on Neal Blvd out to Scenic Hwy. The surveillance team again followed Motta to the original location (Chevron gas station). Inv. Brandle (still wearing a monitoring device) was observed walking into the gas station and so did Motta. Inv. Brandle and Motta walked out to the parking lot and both got into the rear of the vehicle that Inv. Brandle was in. Motta and Inv. Brandle engaged in a conversation about the cocaine and the price. Members of the GCDTF arrived and arrested Motta and detained Walker [Motta's girlfriend]. . . .

---

[21] *Evans v. State*, 263 Ga. App. 572 (2) (588 SE2d 764) (2003).
[22] *DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997).

. . . Motta stated he would show Inv. Boone where the house was that he bought the cocaine. Motta rode with Inv. Boone and Cpl. C. Marion and Motta showed the Investigators which house it was that he purchased the cocaine. Motta showed the Investigators the same location that Sgt. Fetner observed Motta go to while under surveillance.

. . . Walker stated she could show Investigators where Motta got the cocaine and marijuana. . . . Walker rode with affiant and Sgt. J. Fetner and directed the affiant to a house on Carver Circle. The house is yellow with black trim and the numbers 161 are on the right side of the house. There is a white Jeep Cherokee backed into the driveway. The affiant asked Walker if Motta went to any other location and she stated, "No." Walker was returned to the vehicle and was not charged. Motta was charged with VGCSA — Sale of Cocaine and VGCSA — Possession of less than an ounce of marijuana.

Motta is currently facing the previously mentioned charges and is seeking consideration in his case. Motta stated there is more cocaine and marijuana inside the residence on Carver Circle. Motta stated the subject he bought cocaine and marijuana from was "Boogie." "Boogie" is described as a black male approximately 5' 10" with brown eyes and black hair. Motta stated "Boogie's" wife also sells drugs from the location. Motta states that he has purchased marijuana on numerous occasions from the same location.

Lott and Watson argue that the affidavit was not sufficient to establish probable cause because the only link between the residence and illegal drugs was through the hearsay statements made by Motta. They further argue that the magistrate was not justified in relying on Motta's statements because he was not shown to be a trustworthy informant and his statements were not sufficiently corroborated. However, in this matter, Motta was identified by name in the affidavit, and thus, contrary to defendants' argument,

he does not fit the model of the anonymous or confidential informant whose motives in coming forward are unknown, or whose basis of knowledge is not shown, or whose story may be stale — common sense requires that information from such informants be strongly corroborated to be considered reliable.

*Evans*, supra, 263 Ga. App. at 575 (2) (b). In fact, Motta's informa-

tion was received under circumstances showing some indicia of reliability in that he made an inculpatory statement to police during a post-arrest interview. See id. "[W]hen a *named* informant makes a declaration against penal interest and based on personal observation, that in itself provides a substantial basis for the magistrate to credit that statement." (Punctuation omitted; emphasis in original.) *Graddy v. State*.[23] Furthermore, the police surveillance team's observation of Motta meeting with subjects in front of the house at 161 Carver Circle provides some corroboration of Motta's statements. See *State v. Ballew*.[24] Thus, the magistrate was authorized to conclude that Motta had purchased drugs at 161 Carver Circle and that proof of the crime might reasonably still be found at that location. See id. (probable cause for search warrant existed where named informant arrested for drug offense told police that he had purchased drugs at a specific address and police had observed informant leaving that address); *Swan v. State*[25] (probable cause for search warrant where person arrested for drug offense told police that two days earlier he had purchased drugs at a certain house); *Tomlinson v. State*[26] (probable cause for search warrant where named informant made statement that he had bought drugs within last seven days from a couple at their residence).

3. Lott contends that the trial court erred in failing to find that his trial counsel rendered ineffective assistance. Specifically, he argues that his trial counsel performed deficiently by not moving to sever his case from that of his co-defendant Watson. We disagree.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*,[27] "a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency." *Kurtz v. State*.[28] "Making that showing requires that [Lott] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[29] "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Abernathy v. State*.[30]

---

[23] *Graddy v. State*, 277 Ga. 765, 766 (1) (596 SE2d 109) (2004).

[24] *State v. Ballew*, 290 Ga. App. 751, 753-754 (1) (660 SE2d 732) (2008).

[25] *Swan v. State*, 257 Ga. App. 704, 705-706 (1) (572 SE2d 64) (2002).

[26] *Tomlinson v. State*, 242 Ga. App. 117, 118-119 (527 SE2d 626) (2000).

[27] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[28] *Kurtz v. State*, 287 Ga. App. 823, 825 (652 SE2d 858) (2007).

[29] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).

[30] *Abernathy v. State*, 299 Ga. App. 897, 903 (3) (685 SE2d 734) (2009).

"We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous." *Kurtz*, supra, 287 Ga. App. at 825.

In this matter, during the hearing on Lott's and Watson's motions for new trial, Lott's trial counsel testified that he did not move to sever his former client's case from Watson's case because he believed that if the two defendants were tried together, the jury would find that Watson had much more of a connection to the drugs that were found than Lott and thus would only find Watson guilty on the trafficking and possession with intent to distribute charges.

> The failure to file a motion to sever does not require a finding of ineffective assistance where the decision whether to seek severance is a matter of trial tactics or strategy, and a decision amounting to reasonable trial strategy does not constitute deficient performance.

(Punctuation omitted.) *Jackson v. State.*[31] Accordingly, Lott's trial counsel's decision on this issue cannot support a claim of ineffective assistance. See id. (trial counsel's decision to not seek severance so that jury's focus would be on co-defendant instead of counsel's client was reasonable trial strategy).

4. Watson contends that the trial court erred in allowing inadmissible hearsay testimony into evidence over her objection. We disagree.

"The admission of evidence is committed to the sound legal discretion of the presiding judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion." (Punctuation omitted.) *Jennings v. State.*[32] As previously noted, at trial, one of the investigating officers testified that during the search of the house at 161 Carver Circle, the officers found a yellow notebook, which had writing indicating that it was owned by an individual named "Black" and which appeared to contain records of numerous drug sales. The same officer further testified that she had confiscated Watson's cell phone while the police were searching the house and that she had noticed that there was a photograph of Lott with the name "Black" next to it in the cell phone's contacts list. Watson objected to this testimony, which linked Lott to the notebook, but the trial court denied her objection. On appeal, Watson argues that the trial court erred in denying her objection because the officer's testimony constituted hearsay. This argument is without merit.

---

[31] *Jackson v. State*, 281 Ga. 705, 707 (6) (642 SE2d 656) (2007).
[32] *Jennings v. State*, 292 Ga. App. 149, 152 (2) (664 SE2d 248) (2008).

OCGA § 24-3-1 defines hearsay as evidence that "does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." Here, the officer's testimony that the contacts list for Watson's cell phone indicated that "Black" was a nickname for Lott is not hearsay but is a statement of fact based on her own investigation. See *Troutman v. State*.[33] "Because the value of the officer's testimony rested on [her] own veracity and competence, the testimony was not hearsay, and the trial court did not abuse its discretion in admitting it." Id. See also *Diaz v. State*.[34]

*Judgments affirmed. Barnes and Bernes, JJ., concur.*

DECIDED MARCH 31, 2010 —
RECONSIDERATION DENIED APRIL 16, 2010 — 

*Clark & Towne, Jessica R. Towne*, for appellant (case no. A10A0558).

*Donn M. Peevy*, for appellant (case no. A10A0559).

*Daniel J. Porter, District Attorney, Stephen A. Fern, Assistant District Attorney*, for appellee.

---

[33] *Troutman v. State*, 297 Ga. App. 196, 198 (2) (676 SE2d 836) (2009).
[34] *Diaz v. State*, 275 Ga. App. 557, 559 (621 SE2d 543) (2005).