A06A0934. CHAPMAN v. THE STATE.
(630 SE2d 810)

BLACKBURN, Presiding Judge.

Jody Chapman was convicted of possession with intent to distribute methamphetamine, following a jury trial. He appeals his conviction and the denial of his motion for new trial, arguing that the trial court erred in denying his motion to suppress evidence and in improperly charging the jury on accomplice testimony. Chapman further argues that his conviction should be reversed because he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

Viewing the evidence in a light most favorable to the verdict, *Davis v. State,*[1] the record shows that shortly after midnight on February 4, 2005, two Coweta County deputies heard their radio dispatcher direct patrol units to a nearby motel to investigate either an out-of-control party or a drunk and disorderly individual in the parking lot. Upon entering the parking lot located behind the motel, the deputies noticed a vehicle backed into a parking space with Chapman sitting in the passenger's seat and his girlfriend, Amy Neal, in the driver's seat. Finding the circumstances suspicious and unsure as to whether one of the occupants was the subject of the radio dispatch, the deputies exited their vehicle and approached the vehicle to investigate. Both Chapman and Neal appeared very nervous, and as one of the deputies began asking what they were doing at the motel, he noticed on the passenger floorboard an open purse containing plastic sandwich bags, a digital scale, and a large pill bottle wrapped in electrical tape.

Based on Chapman's nervous behavior and the deputy's experience that the items he noticed in plain view were often indicators of

---

[1] *Davis v. State,* 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

illegal narcotics sales, the deputy requested that Chapman exit the vehicle and asked if Chapman would consent to a pat-down search for weapons and contraband. As Chapman walked toward the motel, he consented to a pat-down, and in the course of the pat-down, the deputy found a glass methamphetamine pipe. Chapman was consequently arrested, and the deputy then asked Neal for consent to search her vehicle. She consented, and as a result of the search, the deputy found over an ounce of methamphetamine inside the large tape-covered pill bottle.

Chapman and Neal were indicted on one count of trafficking in methamphetamine.[2] Neal pled guilty to possession with intent to distribute and testified at Chapman's trial that he had placed the drugs in her purse after seeing the deputies approaching. At the trial's conclusion, the jury found Chapman guilty of trafficking in methamphetamine as well as possession with intent to distribute as a lesser included offense. However, the trial court directed the verdict as to trafficking and instead sentenced Chapman on possession with intent to distribute. After appellate counsel was appointed, Chapman's motion for new trial was argued and denied, and this appeal followed.

1. Prior to trial, Chapman moved to suppress the evidence found during the search of his person and Neal's vehicle. The trial court denied his motion and Chapman now appeals. "In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts." *Smith v. State*.[3] Moreover, "[a]bsent an abuse of discretion, the trial court's order on a motion to suppress will not be disturbed." Id.

Chapman contends that the trial court erred in denying his motion to suppress, arguing that the sheriff's deputy did not have a reasonable articulable suspicion sufficient to justify even his initial encounter with Chapman while sitting in Neal's parked vehicle. This contention misses the mark.

> Decisions of the U. S. Supreme Court have delineated three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

---

[2] OCGA § 16-13-31.

[3] *Smith v. State*, 262 Ga. App. 614, 615 (585 SE2d 888) (2003).

(Punctuation omitted.) *State v. Bryant*.[4] The issue presented here is whether the deputy's initial approach to Neal's vehicle, in which Chapman was a passenger, was a first-tier encounter (a verbal communication absent coercion or detention) or a second-tier encounter (a brief stop or seizure requiring the deputy to have reasonable suspicion).

"A first-tier encounter never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens." *State v. Folk*.[5] A second-tier encounter, on the other hand, may violate the Fourth Amendment if the officer briefly stops or seizes a citizen without a particularized and objective basis for suspecting that a citizen is involved in criminal activity. See *State v. Tollefson*.[6] "Moreover, a 'seizure' within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave." *Folk*, supra, 238 Ga. App. at 207.

In this case, the record indicates the deputy's initial approach to Neal's vehicle was a first-tier encounter, requiring neither reasonable suspicion nor invoking Fourth Amendment protection for Chapman. Having responded to a radio dispatch regarding a possible loud party or drunk and disorderly person at the motel, the deputy approached Neal's stopped vehicle in order to inquire what was going on and whether any assistance was needed. "It is well established that an officer's approach of a stopped vehicle and inquiry as to what is going on does not constitute a stop or seizure and clearly falls within the realm of the first type of police-citizen encounter." (Punctuation omitted.) *Folk*, supra, 238 Ga. App. at 207; see also *McClain v. State*.[7] In addition, there was no evidence that the deputy initially either restrained Chapman's movement by means of physical force or show of authority, or that the deputy prevented Neal's vehicle from driving away during this initial encounter. Thus, no reasonable suspicion was required for the deputy's initial approach of Neal's vehicle. See *Folk*, supra, 238 Ga. App. at 207-208; *Bryant*, supra, 203 Ga. App. at 71.

Having established that the deputy was justified in initiating the first-tier encounter with Chapman and Neal, we next inquire as to whether the trial court erred in finding that the deputy's subsequent

---

[4] *State v. Bryant*, 203 Ga. App. 69, 70 (416 SE2d 368) (1992).

[5] *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999).

[6] *State v. Tollefson*, 259 Ga. App. 320, 322 (1) (b) (577 SE2d 21) (2003).

[7] *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

search of Chapman's person and Neal's vehicle was proper. The State argues that these searches were valid given the fact that the deputy saw suspicious items in plain view in Neal's vehicle, which provided him with a reasonable suspicion to believe a crime had been or was being committed.

The plain view doctrine applies when the police officer had a prior justification for an intrusion, in the course of which he came inadvertently across a piece of evidence incriminating the accused. See *Coolidge v. New Hampshire*.[8] "In Georgia, this principle extends to the observation of evidence in plain view inside automobiles when the officer was lawfully at the place where he observed the incriminating evidence." (Punctuation omitted.) *Crosby v. State*.[9] Moreover, "[t]he viewing need not be motivated by any articulable suspicion. On the contrary, law enforcement officers simply have the right to look into automobiles, so long as they have a legitimate reason and are looking from a place in which they have a right to be." Id.

At both the hearing on Chapman's motion to suppress and at trial, the deputy testified that shortly after he approached Neal's vehicle, he saw, in plain view protruding from a purse on the passenger side floorboard, sandwich bags, a digital scale, and a large pill bottle wrapped in electrical tape. Based on the time of night, Chapman's and Neal's nervous behavior, and his experience that the items in plain view were commonly used in the sale of illegal narcotics, the deputy had a reasonable belief that a crime had been or was being committed. See *Bryant*, supra, 203 Ga. App. at 71; *Stiggers v. State*.[10] Under *Terry v. Ohio*,[11] the deputy was therefore authorized to briefly detain Chapman and conduct a pat-down search for weapons that he reasonably believed could have been in Chapman's possession. See *Holmes v. State*;[12] *State v. Cannon*[13] (" '[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed' ").

Furthermore, the fact that the deputy's pat-down search of Chapman uncovered drug paraphernalia, rather than any weapons, does not render the search invalid or the evidence inadmissible. As held by the Supreme Court of the United States:

[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its

---

[8] *Coolidge v. New Hampshire*, 403 U. S. 443, 466 (II) (C) (91 SC 2022, 29 LE2d 564) (1971).
[9] *Crosby v. State*, 266 Ga. App. 856, 858 (598 SE2d 507) (2004).
[10] *Stiggers v. State*, 151 Ga. App. 546, 549 (1) (260 SE2d 413) (1979).
[11] *Terry v. Ohio*, 392 U. S. 1, 27 (III) (88 SC 1868, 20 LE2d 889) (1968).
[12] *Holmes v. State*, 267 Ga. App. 651, 652 (601 SE2d 134) (2004).
[13] *State v. Cannon*, 253 Ga. App. 445, 447 (559 SE2d 76) (2002).

identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical consideration that inhere in the plain-view context.

*Minnesota v. Dickerson;*[14] see also *Howard v. State.*[15] Here, the deputy testified that in patting down Chapman's outer clothing, he felt what he knew from his experience to be a methamphetamine pipe. Consequently, he was entitled to seize this evidence. See id.

Finally, without addressing whether or not Chapman has standing to specifically contest the search of Neal's vehicle, we find that this search was also proper. Given the validity of the deputy's initial approach of Neal's vehicle, as well as his subsequent brief detention of Chapman and Neal based on his reasonable suspicions, Neal's consent to the deputy's request to search the vehicle was also valid. See *Fitz v. State.*[16] Accordingly, the trial court did not err in denying Chapman's motion to suppress.

2. Chapman also contends that the trial court erred in improperly charging the jury on the issue of accomplice testimony. Although he did not object or reserve objections to any of the jury charges, Chapman nevertheless argues that the charge given on accomplice testimony improperly shifted the burden of proof and therefore his conviction should be reversed. This contention is without merit.

"It is well established that if a defendant fails to object to a charge when asked if he has any objections, and fails to reserve objections, he has waived appellate review of the charge as given." (Punctuation omitted.) *Brown v. State.*[17] The only exception to this rule is when a substantial error in the charge exists that is harmful as a matter of law. See OCGA § 5-5-24 (c); *Medina v. State.*[18] In order to demonstrate such error, Chapman must show that "the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. Nothing is presented for consideration on appeal unless a gross miscarriage of justice attributable to the jury charge is about to result." *Brown,* supra, 268 Ga. App. at 632 (2).

---

[14] *Minnesota v. Dickerson,* 508 U. S. 366, 375-376 (II) (B) (113 SC 2130, 124 LE2d 334) (1993).

[15] *Howard v. State,* 253 Ga. App. 158, 160 (558 SE2d 745) (2002).

[16] *Fitz v. State,* 275 Ga. App. 817, 820 (1) (622 SE2d 46) (2005).

[17] *Brown v. State,* 268 Ga. App. 629, 632 (2) (602 SE2d 158) (2004).

[18] *Medina v. State,* 234 Ga. App. 13, 15 (2) (505 SE2d 558) (1998).

Here, the charge, taken almost directly from the pattern jury instructions,[19] read:

> Now, the testimony of a single witness, if believed, is generally sufficient to establish a fact. An exception to this rule is made in cases such as this when felonies are charged where the witness is an accomplice. Testimony of an accomplice alone is not sufficient to warrant a conviction. The accomplice's testimony must be supported by other evidence of some type if that evidence is such that belief or inference of the guilt of the accused independent of the testimony of the accomplice [sic]. It is not required that supporting evidence be sufficient to warrant a conviction or that the testimony of the accomplice be supported in every material detail.
>
> The supporting evidence must be more than a crime was actually committed by someone. It must be sufficient to connect the accused with the criminal act. It must be more than sufficient to merely cast upon the accused a grave suspicion of guilt. Slight evidence from another source that connects the accused with the commission of the alleged crime and tends to show participation in it may be sufficient supporting evidence of the testimony of an accomplice.
>
> In order to convict, that evidence, when considered with all the other evidence in the case, must be sufficient to satisfy you beyond a reasonable doubt that the accused is guilty. Whether or not any witness in this case was an accomplice is a question for you to determine from the evidence in this case. The sufficiency of the supporting evidence of an accomplice is a matter solely for you to determine.

Chapman argues that the portion of the charge stating that slight evidence from another source connecting the accused to the crime may be sufficient supporting evidence of the accomplice's testimony was improper and confused the jury by taking away the requirement of proof beyond a reasonable doubt and replacing it with a standard of appellate review. We disagree. The record shows that the charge given was virtually identical to the charge on accomplice

---

[19] Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, Sec. 1.31.90, p. 17 (3d ed. 2003).

testimony contained in the pattern jury instructions and specifically approved by the Supreme Court of Georgia in *Terrell v. State*.[20] See also *Edmond v. State*.[21] Accordingly, as a matter of law, Chapman cannot show that this charge was harmful.

3. On appeal, Chapman, for the first time, contends that he received ineffective assistance of counsel as a matter of law because his trial counsel failed to object or reserve objections to the jury charge on corroboration of accomplice testimony. "The rule that an ineffectiveness claim must be raised at the earliest practicable moment requires that that claim be raised before appeal if the opportunity to do so is available." (Punctuation and emphasis omitted.) *Holland v. State*.[22] If the claim is not raised at the earliest practicable moment, it is waived. *Thompson v. State*.[23] In this case, appellate counsel argued Chapman's motion for new trial but failed to raise an ineffective assistance of counsel claim. Thus, this claim has been waived. See id.; *Wilder v. State*.[24]

Moreover, even assuming arguendo that this appeal presented the first practicable moment for Chapman to raise the claim that his trial counsel rendered ineffective assistance by not objecting to the jury charge on corroboration of accomplice testimony, his claim is without merit. To prevail on a claim of ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense of the case. *Strickland v. Washington*.[25] See also *Kelly v. State*.[26] Trial counsel is afforded a strong presumption that his conduct and decisions are reasonable. *Strickland*, supra, 466 U. S. at 689 (III) (A); *Kelly*, supra, 267 Ga. at 253 (2).

Here, as a matter of law, Chapman cannot show that his trial counsel's performance was deficient. As discussed in Division 2, the jury charge on corroboration of accomplice testimony given by the trial court was, in fact, proper and not harmful as a matter of law. See *Terrell*, supra, 271 Ga. at 786 (4); *Edmond*, supra, 267 Ga. at 287 (2). Because Chapman cannot show that the jury charge was erroneous, he cannot prove ineffective assistance based on his counsel's failure to object to that charge. See *Millen v. State*.[27]

*Judgment affirmed. Mikell and Adams, JJ., concur.*

---

[20] *Terrell v. State*, 271 Ga. 783, 786 (4) (523 SE2d 294) (1999).

[21] *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996).

[22] *Holland v. State*, 240 Ga. App. 169, 171 (4) (523 SE2d 33) (1999).

[23] *Thompson v. State*, 257 Ga. 386, 388 (2) (359 SE2d 664) (1987).

[24] *Wilder v. State*, 243 Ga. App. 807, 809 (5) (534 SE2d 487) (2000).

[25] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[26] *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

[27] *Millen v. State*, 267 Ga. App. 879, 883 (2) (a) (iv) (600 SE2d 604) (2004).

DECIDED MAY 4, 2006.

*Gerald P. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Kevin T. McMurry, Assistant District Attorney*, for appellee.