A07A0884. RAMIREZ v. THE STATE.
(653 SE2d 837)

Smith, Presiding Judge.

Luz Ramirez was indicted on seven counts involving murder, felony murder and aggravated assault, but found guilty only on one count each of involuntary manslaughter and aggravated assault. Following the denial of her motion for new trial, Ramirez appeals,

arguing that the two jury verdicts are mutually exclusive, challenging the admission of statements she made to a polygrapher, and also challenging the sufficiency of the evidence to support her involuntary manslaughter conviction. For the following reasons, we affirm.

Construed in favor of the verdict, the evidence showed that Ramirez hired two men to kill the victim (who was seeing Ramirez's husband) for $4,000. The two men knocked on the victim's door and told her that they were looking for Ramirez's husband. Once inside the home, the two men punched, kicked, and strangled the victim with a cable, killing her. They then wrapped the victim's body in a blanket and dumped it in a wooded area. Both men subsequently pled guilty to murder.

During the investigation into the victim's death, Ramirez gave two statements to police. After the second statement, officers asked Ramirez to take a polygraph exam, and Ramirez agreed. When she failed the polygraph exam, the polygrapher asked Ramirez to tell the truth about her involvement. Ramirez then admitted she hired the two men to scare the victim. Ramirez was moved to another room, and when the homicide detective arrived, he read Ramirez the *Miranda* warnings and then took her statement. Ramirez again admitted that she hired the two men, but insisted she only intended to scare the victim.

The jury found Ramirez not guilty on one count of murder, two counts of felony murder, and two counts of aggravated assault. Jurors found her guilty on the lesser included offense of involuntary manslaughter on one of the felony murder counts and guilty on one count of aggravated assault. Following the denial of Ramirez's motion for new trial, she appeals.

1. Ramirez makes two arguments regarding the admission of statements made following her polygraph examination. She first argues that these statements were not freely and voluntarily given. Ramirez also argues that the trial court erred in failing to exclude her confession on the ground that she was under arrest and had not been given *Miranda* warnings when she made the statements.

(a) Ramirez argues that her confession to the polygrapher was made with the hope of benefit. She contends that the polygrapher and an officer told her that if she cooperated by telling them what she knew of the murder, they would inform the district attorney and the court of her cooperation. The record reveals that after Ramirez failed the polygraph examination, the polygrapher encouraged her to cooperate, and an officer informed her that the judge would be told of her cooperation so that he could decide whether to set a bond, and that the "prosecutor would do what he could." The officer stated further that he could not make any promises. "[M]erely encouraging a suspect to tell the truth does not amount to the hope of benefit so as to render the

suspect's inculpatory statement involuntary and therefore inadmissible. Nor does telling a suspect that his cooperation will be made known." (Citations omitted.) *Gilliam v. State,* 268 Ga. 690, 692 (3) (492 SE2d 185) (1997). The admission of Ramirez's statement was not error.

(b) Ramirez argues that her confession should have been excluded because she was under arrest and had not been read her *Miranda* warnings.

> To determine if an individual is in custody for purposes of *Miranda,* courts must inquire into whether that person's freedom of movement was restrained to a degree associated with a formal arrest. This inquiry involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave.

(Citations omitted.) *Grayer v. State,* 282 Ga. 224, 228 (3) (647 SE2d 264) (2007). The record reveals that Ramirez had submitted to previous interviews with law enforcement and went home after each interview. Upon the request of officers, she agreed to a polygraph examination. After Ramirez failed the polygraph examination, she began to confess her involvement in the death of the victim to the polygrapher. The homicide detective was then paged, and Ramirez was moved to another room. When the detective arrived, he gave Ramirez the *Miranda* warnings. Ramirez then gave a statement admitting her involvement.[1]

"Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required." (Citations and punctuation omitted.) *Durham v. State,* 281 Ga. 208, 209 (2) (636 SE2d 513) (2006). In this case, Ramirez was not in custody at the time she took the polygraph exam, just as she was not in custody at the time of her previous interviews with officers. And the record does not show that Ramirez "informed the officers that [s]he wanted the [polygraph examination] to end, that [s]he wished to speak with counsel, or that [s]he wished to leave the station." (Citation and punctuation omitted.) *Vaughn v. State,* 282 Ga. 99, 102 (4) (646 SE2d 212) (2007). It was only following the exam and her incriminating statements that officers made the

---

[1] The record also reveals that before Ramirez was moved to another room and read the *Miranda* warnings, the polygrapher asked the officer present if Ramirez was going to be arrested, and the officer's response to the polygrapher was "yes." It is not clear from the record, however, whether Ramirez, who was Spanish-speaking, understood the question or the answer.

decision to arrest Ramirez. As soon as Ramirez was moved to another room, the detective read her the *Miranda* warnings before questioning her. Under these circumstances, the trial court did not clearly err by finding that Ramirez was not in custody when she made the statements to the polygrapher. See id.

2. Ramirez contends that the jury's verdicts were mutually exclusive. She contends that since she was acquitted of felony murder, the jury "must have decided that the [victim] died while the Appellant was committing an unlawful act other than the aggravated assault" and that such "excludes a finding of guilt on aggravated assault." Although Ramirez's argument is couched in terms of "mutually exclusive verdicts," much of her argument is that the verdicts of not guilty on felony murder and guilty on aggravated assault are inconsistent. See *Shepherd v. State*, 280 Ga. 245, 248 (1) (626 SE2d 96) (2006). Because it is well settled that the inconsistent verdict rule has been abolished in Georgia, we find no merit in this assertion. See *Smith v. State*, 280 Ga. 340 (2) (627 SE2d 1) (2006).

Ramirez also argues that her conviction for "aggravated assault cannot stand if the jury only found that the Appellant has committed only a misdemeanor battery or misdemeanor assault." Here, Ramirez was found guilty of both aggravated assault and felony-grade involuntary manslaughter by the commission of a simple assault or simple battery. However, the intent element of simple battery or simple assault is not inconsistent with the mens rea required for the greater offense of aggravated assault. See *Waits v. State*, 282 Ga. 1 (644 SE2d 127) (2007). This is not a case of mutually exclusive verdicts involving criminal intent and criminal negligence that would warrant a reversal. Compare *Jackson v. State*, 276 Ga. 408, 412 (2) (577 SE2d 570) (2003) (verdict of felony murder predicated on assault was mutually exclusive of verdict on involuntary manslaughter predicated on reckless conduct). Therefore, to the extent that Ramirez contends the verdicts were mutually exclusive, her argument fails.

3. Ramirez argues that the evidence was insufficient to find her guilty of involuntary manslaughter. This enumeration is moot, however, because the trial court merged that count into the aggravated assault count for purposes of sentencing. See *Black v. State*, 248 Ga. App. 626, 627 (2) (548 SE2d 9) (2001).

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED NOVEMBER 6, 2007.

*Lawrence J. Zimmerman, Norman H. Cuadra*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, David E. Boyle, Assistant District Attorney*, for appellee.