## A08A1292. JENNINGS v. THE STATE.
(664 SE2d 248)

BLACKBURN, Presiding Judge.

Following a bench trial, Thaddeus Jennings appeals his conviction on two counts of false imprisonment[1] and on single counts of aggravated assault,[2] aggravated sodomy,[3] rape,[4] armed robbery,[5] and possession of a firearm during the commission of a felony.[6] He challenges the sufficiency of the evidence and argues that the trial

---

[9] *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SC 2052, 80 LE2d 674) (1984).
[1] OCGA § 16-5-41 (a).
[2] OCGA § 16-5-21 (a) (2).
[3] OCGA § 16-6-2 (a) (2).
[4] OCGA § 16-6-1 (a).
[5] OCGA § 16-8-41 (a).
[6] OCGA § 16-11-106 (b).

court erred in several evidentiary rulings. Discerning no error, we affirm.

1. When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[7] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*.[8]

So viewed, the evidence shows that on October 27, 2001, Jennings and a compatriot approached an apartment residence of a friend of Jennings (who Jennings believed owed him money); a nearby witness saw them bearing arms. When they entered the apartment, an 11-year-old witness in the apartment recognized Jennings and saw he had a gun. An adult female in the kitchen of the apartment was on the phone; the two men ripped the phone off the wall and put a gun to her head, causing her to leave. The two men then entered the apartment's bedroom, where Jennings's friend (Harold Norris) and Norris's girlfriend were in bed. Announcing that he had found his prey and that he had come to "get blood" and money, Jennings pointed a gun at Norris and told him that he intended to kill him. Jennings then demanded that the girlfriend submit to sex acts or else he would shoot Norris. Keeping the gun trained on Norris, Jennings instructed the girlfriend to perform oral sex on the compatriot, with which instruction she complied. After threatening to shoot Norris and his girlfriend, Jennings handed the gun to the compatriot and announced that it was his turn; while the compatriot kept the gun trained on Norris, Jennings took the girlfriend to the kitchen, where he forced her to perform oral sex on him and also forced her to engage in sexual intercourse with him.

Jennings returned with the girlfriend to the bedroom and, having received the weapon back from the compatriot, stated that both Norris and his girlfriend were going to die since the girlfriend had failed to satisfy him. The compatriot then left the bedroom and searched the apartment for valuables, returning with the girlfriend's identification card, social security card, birth certificate, and five dollars. As the two men argued over who would shoot Norris and his girlfriend, police arrived, causing the two men to flee.

Based on this evidence, the judge in a bench trial found Jennings guilty of aggravated assault against Norris, false imprisonment against both victims, aggravated sodomy against the girlfriend, rape

---

[7] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[8] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

against the girlfriend, armed robbery against the girlfriend, and possession of a firearm while committing the aggravated sodomy against the girlfriend. Jennings challenges the sufficiency of the evidence on only three counts: the armed robbery against the girlfriend, the armed robbery against Norris, and the possession of the firearm during the aggravated sodomy against the girlfriend.

(a) *Armed robbery against the girlfriend.* With regard to the armed robbery against the girlfriend, Jennings first claims that since the girlfriend testified that she personally never saw the gun, no evidence supported the element of a weapon needed for this crime. See OCGA § 16-8-41 (a). However, the presence of a weapon

> may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon itself was neither seen nor accurately described by the victim. Some physical manifestation of a weapon is required, however, *or some evidence from which the presence of a weapon may be inferred.*

(Punctuation omitted; emphasis in original.) *Prins v. State.*[9] See *Hughes v. State*[10] (presence of weapon "may be established by circumstantial evidence"). Thus, "the question is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon." (Punctuation omitted.) *Prins*, supra, 246 Ga. App. at 586 (1).

Here, four other witnesses (the bystander outside the apartment, the eleven-year-old inside the apartment, the adult female in the kitchen of the apartment, and Norris) all saw Jennings bearing the gun. Jennings told the girlfriend that he had a gun and that he would shoot her and Norris if she did not comply with his demands, and Norris saw the gun in either the hands of Jennings or the hands of the compatriot throughout the encounter. The girlfriend testified that she believed Jennings had a gun. Sufficient circumstantial and direct evidence authorized the judge to conclude that the girlfriend reasonably believed Jennings had a gun. *Prins*, supra, 246 Ga. App. at 587 (1). See *Richard v. State.*[11]

Jennings next contends that because the compatriot left the bedroom and took the items from the nearby living room rather than from the bedroom where the girlfriend and Norris were forced to remain, the State did not prove that the property was taken from her

---

[9] *Prins v. State*, 246 Ga. App. 585, 586 (1) (539 SE2d 236) (2000).
[10] *Hughes v. State*, 185 Ga. App. 40, 41 (363 SE2d 336) (1987).
[11] *Richard v. State*, 287 Ga. App. 399, 400-401 (1) (651 SE2d 514) (2007).

person or immediate presence as required by OCGA § 16-8-41 (a). However,

> [i]t has long been recognized that when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed. Thus, the "immediate presence" element of the offense of armed robbery has been held to extend fairly far, and robbery convictions are upheld even out of the physical presence of the victim.

(Punctuation and footnote omitted.) *Wilson v. State.*[12] See *Welch v. State.*[13] Considering that the victims were held at gunpoint in the bedroom while property was taken from the living room, we hold that "the theft was not too far afield to be outside [the victims'] immediate presence." *Meyers v. State.*[14]

(b) *Armed robbery against Norris.* Jennings argues that the evidence was insufficient to find him guilty of armed robbery against Norris. "This enumeration is moot, however, because the trial court merged that count into the [armed robbery] count [against the girlfriend] for purposes of sentencing." *Ramirez v. State.*[15]

(c) *Possession of firearm during commission of felony.* Jennings contends that because the girlfriend did not personally see the gun, the State failed to prove that he possessed a firearm during the commission of the aggravated sodomy against the girlfriend. However, she testified that she submitted to the aggravated sodomy because he said he had a gun and would shoot her and Norris if she did not comply; she believed he had a gun; and others saw the gun. Thus, sufficient circumstantial evidence supported a finding that he possessed a firearm during the commission of the aggravated sodomy. See *Prins*, supra, 246 Ga. App. at 586-587 (1).

2. Jennings claims that the court committed several evidentiary errors. In this regard, we note at the outset that "[t]he admission of evidence is committed to the sound legal discretion of the presiding judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion." (Punctuation omitted.) *Patterson v. State.*[16] We discern no abuse here.

(a) *Refusal to admit rape victim's prior sexual history.* Jennings first complains that the trial court erred in refusing to admit his

---

[12] *Wilson v. State*, 291 Ga. App. 69, 70-71, (1) (a) (661 SE2d 221) (2008).

[13] *Welch v. State*, 235 Ga. 243, 245-246 (1) (219 SE2d 151) (1975).

[14] *Meyers v. State*, 249 Ga. App. 248, 249 (547 SE2d 781) (2001).

[15] *Ramirez v. State*, 288 Ga. App. 249, 252 (3) (653 SE2d 837) (2007).

[16] *Patterson v. State*, 287 Ga. App. 100, 100 (650 SE2d 770) (2007).

proffered evidence that on several prior occasions, the girlfriend had voluntarily engaged in sex with him and others in his presence. OCGA § 24-2-3 prohibits admitting the past sexual behavior of an alleged rape victim unless the trial court finds that the past behavior directly involved the participation of the defendant and further finds that the behavior supports an inference that the defendant could have reasonably believed that the victim consented to the conduct at issue. *Davis v. State*.[17] When making a determination as to the latter factor, a court may rely on evidence of force and of lack of consent in finding that the defendant could not have reasonably believed that the victim willingly had sex with him. *Williams v. State*.[18] See *Davis*, supra, 235 Ga. App. at 363 (1).

Here, evidence supported the trial court's determination that Jennings could not have reasonably believed that the victim consented to the sodomy and intercourse at issue. Substantial evidence showed that Jennings brandished a gun and threatened to shoot Norris and the victim if she did not comply with his demands for sex. The court was authorized to find that evidence of prior sexual encounters with the victim did not lead to an inference of consent here. "Because [Jennings] failed to satisfy the requirements of OCGA § 24-2-3 (b), the court did not abuse its discretion in excluding evidence of the victim['s] past sexual behavior." *Williams*, supra, 257 Ga. App. at 56 (1).

(b) *Allowed officer to testify to what Norris said.* Citing the hearsay rule, Jennings claims that the trial court erred in allowing an officer to testify as to what Norris told him regarding an earlier incident when the officer came to investigate a complaint at Norris's residence. However, Norris took the stand and testified to the same facts. "Evidence which is cumulative of other legally admissible evidence of the same fact renders harmless admission of incompetent evidence." (Punctuation omitted.) *Leggon v. State*.[19]

(c) *Allowed officer to testify to what an unidentified female said.* Again citing hearsay grounds, Jennings contends that the trial court erred in allowing an officer to testify as to what an unidentified female at the crime scene said when he arrived within minutes of the incident at issue. Specifically, the officer testified (over a hearsay objection) that when he arrived at the crime scene within minutes of the emergency call, an unidentified female who was upset approached him outside the residence and informed him that

---

[17] *Davis v. State*, 235 Ga. App. 362, 363 (1) (509 SE2d 655) (1998).
[18] *Williams v. State*, 257 Ga. App. 54, 56 (1) (570 SE2d 362) (2002).
[19] *Leggon v. State*, 249 Ga. App. 467, 472 (4) (549 SE2d 137) (2001).

something bad was happening [b]ecause she said she saw these men with these guns. . . . She had said that she saw these men going in the home; they had handguns; and they closed the door; and she couldn't see anything from there. She just knew something bad had to be happening with them having handguns.

The court admitted the testimony as res gestae.

Under OCGA § 24-3-3, "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

> The admissibility of declarations as part of the res gestae is left to the sound discretion of the trial court, considering the time, circumstances, and statements in question. So long as the statement is relevant and made without premeditation, the trial court may admit the evidence.

(Punctuation and footnote omitted.) *Espy v. State*.[20]

Here, the immediacy and urgency of the statement by the upset woman who had just witnessed the men enter the apartment, made to an officer approaching the scene within minutes of the emergency call, authorized the trial court in its discretion to admit the statement as res gestae. See *Espy*, supra, 246 Ga. App. at 2. See also *Gilbert v. State*.[21]

Jennings's newly-minted argument on appeal that the testimony also violated his constitutional right to confront witnesses was waived by his failure to object on this ground below. *Walton v. State*[22] (defendant "did not object at trial on confrontation grounds; he objected simply on the basis that the testimony was hearsay. Consequently, he cannot now for the first time raise an issue regarding a violation of his right of confrontation").

(d) *Allowed officer to testify to what adult female in apartment kitchen said.* Jennings further contends that the trial court erred in admitting an officer's testimony as to what the adult female in the kitchen of the apartment said. Specifically, when the officer arrived within minutes of the emergency call to investigate, she told the officer that two men came into the kitchen of the apartment as she was talking on the phone, ripped the phone out of the wall, and placed a gun to her head; she left the apartment when the men

---

[20] *Espy v. State*, 246 Ga. App. 1, 2 (2) (539 SE2d 513) (2000).
[21] *Gilbert v. State*, 241 Ga. App. 57, 60 (3) (526 SE2d 88) (1999).
[22] *Walton v. State*, 278 Ga. 432, 436 (2) (603 SE2d 263) (2004).

entered the bedroom. Jennings objected to this testimony as hearsay, and the court admitted it as res gestae.

As with the statement of the unidentified female bystander, the statement of this third victim, who was upset and animated, was made at the scene within minutes of the incident and was made to an investigating officer. We discern no abuse of discretion in allowing this evidence as res gestae. See *Christensen v. State*.[23] See also *McKinney v. State*[24] ("[t]his testimony as to what the victim told the witness very shortly after the attack was properly admissible as part of the res gestae pursuant to OCGA § 24-3-3") (punctuation omitted).

On appeal, Jennings also argues that the admission of this testimony violated his constitutional right to confront the witness. Although Jennings eventually did raise a confrontation objection to this conversation in the court below, the first time the officer testified to this conversation, Jennings raised only hearsay as grounds for the objection. When the State some time later began to ask about this conversation a second time, Jennings for the first time asserted an objection on constitutional "right to confront" grounds. The State immediately ceased asking about this conversation, and the conversation was not brought up again during the officer's testimony. Accordingly, as no testimony regarding the conversation was given at the time of or after the confrontational objection, there is no harmful error to be considered on appeal. Cf. *Life Ins. Co. of Ga. v. Lawler*.[25]

We discern no abuse of discretion in any of the challenged evidentiary rulings.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JUNE 23, 2008.

*Dell Jackson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[23] *Christensen v. State*, 245 Ga. App. 165, 168 (4) (537 SE2d 446) (2000).
[24] *McKinney v. State*, 218 Ga. App. 633, 634 (1) (463 SE2d 136) (1995).
[25] *Life Ins. Co. of Ga. v. Lawler*, 211 Ga. 246, 252 (2) (85 SE2d 1) (1954).