**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 22, 2013**

# In the Court of Appeals of Georgia

A12A1898. DURRANCE v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Jason Durrance was convicted of driving with an alcohol concentration exceeding 0.08 grams ("DUI per se" OCGA § 40-6-391 (a) (5)).[1] Durrance filed a motion for new trial, which the trial court denied. On appeal, Durrance contends that the trial court erred in denying his motion to suppress the results of the breath test and the field sobriety examination. Durrance also contends that the trial court erred in allowing the State to cross-examine him and present

---

[1] The jury also found Durrance guilty of driving under the influence of alcohol to the extent that he was a less safe driver ("DUI less safe" OCGA § 40-6-391 (a) (1)). He was not convicted of the DUI less safe offense, however, because the trial court merged the offense into the DUI per se charge. See *Slack v. State*, 288 Ga. 659, 661 (2) (706 SE2d 447) (2011).

evidence showing the severity of an argument he had with his wife prior to the DUI offense. Durrance also challenges the trial court's sentence, contending that the trial court imposed probation conditions that were unduly restrictive and unrelated to his conviction.[2] For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the evidence shows that on the night of February 25, 2011, Durrance's wife called the police to report a domestic disturbance with Durrance. The officers were dispatched to a neighbor's house where Durrance's wife had fled. The officers were informed that Durrance may have had a weapon, and that they needed to park their vehicles a safe distance from the house in order to assess the situation. Since there was no shoulder on the road, the officers parked their vehicles in the roadway.

Several minutes after Durrance noticed the officers congregating in front of the neighbor's residence, he drove to the officers' location to determine why they were

---

[2] Although Durrance also challenges the sufficiency of the evidence regarding the DUI less safe offense, his claim is rendered moot by the trial court's merging of that count for sentencing. See, e.g., *Ramirez v. State*, 288 Ga. App. 249, 252 (3) (653 SE2d 837) (2007); *Davidson v. State*, 237 Ga. App. 580, 582 (3) (516 SE2d 90) (1999).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2

there. When Durrance stopped at the patrol vehicles, one officer explained to Durrance that they were responding to a call, and that they would move their vehicles as soon as they could to allow Durrance to pass. Durrance responded that his wife probably made the call. When the officer determined that Durrance was the suspect, he asked Durrance to shut off the vehicle's engine, keep his hands in plain view, and exit the vehicle.

As soon as Durrance exited his vehicle, an officer detected a strong odor of alcohol coming from Durrance and the vehicle. The officer also noticed that Durrance was sluggish and off-balance, his eyes were bloodshot and watery, and his speech was slurred. Durrance admitted that he been drinking beer and vodka that night. Durrance failed some of the field sobriety tests administered to him, and he registered a positive alco-sensor test result. Durrance was arrested for DUI, was read the required implied consent notice, and agreed to give a State-administered breath sample on the Intoxilyzer 5000 device. The test results indicated that Durrance had blood alcohol concentration levels of 0.092 and 0.089.

Durrance was charged and convicted of DUI per se. Durrance appeals as follows.

1. Durrance contends that the trial court erred in denying his motion to suppress and argues that our review of the trial court's ruling should be limited to evidence adduced at the suppression hearing. We disagree.

"When reviewing a trial court's ruling on a motion to suppress, the evidence must be construed most favorably toward the court's findings unless those findings are clearly erroneous." (Citation and punctuation omitted.) *Herring v. State*, 279 Ga. App. 162 (630 SE2d 776) (2006). The trial court's application of the law to undisputed facts is subject to de novo review. *State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005).

Notwithstanding Durrance's claim to the contrary, it is well settled that in reviewing a trial court's decision on a motion to suppress, we may consider all relevant evidence of record, including evidence introduced at trial. See *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007); see also *Bonds v. State*, 188 Ga. App. 135 (372 SE2d 448) (1988) (providing that we may consider all relevant evidence introduced at a pretrial hearing, an appropriate post-trial hearing, or at trial when reviewing the denial of motion to suppress). Applying this standard, we turn to address Durrance's specific claims.

(a) Durrance argues that the trial court should have granted his motion to suppress because the police instituted an unauthorized roadblock. His claim lacks merit.

A roadblock is a checkpoint designed to stop drivers on a road for various purposes, including screening for impaired drivers and checking drivers' licenses. See *Thomas v. State*, 277 Ga. App. 88, 90 (625 SE2d 455) (2005).

Here, there is no evidence the police officers were conducting a roadblock. Rather, the officers were responding to an emergency call made by Durrance's wife. Since the officers were advised that Durrance had a weapon, they parked their vehicles a safe distance away from the house in which the call was made. Although this required the officers to park their vehicles in the road, there was no evidence that the officers were purposefully stopping vehicles in order to screen drivers. Notably, an officer testified that approaching drivers could move around the patrol vehicles if they wished to continue down the road. In addition, when Durrance came upon the parked patrol vehicles, there is no evidence that the officers commanded Durrance to stop or otherwise indicated that he was not free to pass. As a result, Durrance has failed to demonstrate that the officers were conducting a roadblock.

(b) Durrance next argues that the police officers stopped him without reasonable suspicion. Again, his claim lacks merit.

> [There are] three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.
>
> . . .
>
> A first-tier encounter never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. A second-tier encounter, on the other hand, may violate the Fourth Amendment if the officer briefly stops or seizes a citizen without a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.

(Citations, punctuation, and footnotes omitted.) *Chapman v. State*, 279 Ga. App. 200, 201-202 (1) (630 SE2d 810) (2006).

Here, Durrance decided to drive to the officers' location to determine why they were there. Durrance stopped at the parked patrol vehicles without being directed to do so. The officer approached Durrance's stopped vehicle to inform Durrance of the situation, and the officer's approach falls within the first-tier encounter. See

6

*Chapman*, supra, 279 Ga. App. at 202 (1); see also *In the Interest of A.A.*, 265 Ga. App. 369, 371-372 (1) (593 SE2d 891) (2004) (officers' approach of stopped vehicle was a first-tier encounter despite the fact that officer's vehicle was blocking the driveway). Additionally, the evidence shows that the officers would have allowed vehicles to pass, and there is no evidence showing that the officer either restrained Durrance's movement by means of physical force or show of authority, or that the officer prevented Durrance from turning around and driving away during the initial encounter. Consequently, the officer did not need a reasonable suspicion to approach Durrance's stopped vehicle. *Chapman*, supra, 279 Ga. App. at 202 (1).

(c) Durrance next contends that when he was asked to exit the vehicle and was questioned, the officers were required to provide him *Miranda*[4] warnings because he was restrained to a degree associated with a formal arrest. We disagree.

> An individual must be advised of his *Miranda* rights, including his right against self-incrimination, only after being taken into custody or otherwise deprived of his freedom of action in any significant way. A person is in custody for *Miranda* purposes if he has been formally arrested or restrained to the degree associated with a formal arrest. The test for determining whether a detainee is in custody for *Miranda* purposes is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. . . . As a general rule, although a motorist is deprived of his freedom of action during a

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

7

traffic stop, such detention is insufficient to trigger the rights set forth in *Miranda*. The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.

(Citations and punctuation omitted.) *Waters v. State*, 306 Ga. App. 114, 116 (1) (701 SE2d 550) (2010).

Here, Durrance was asked to exit the vehicle, keep his hands visible, and allow himself to be patted down for weapons after he identified himself as a suspect in the domestic violence investigation. These actions did not amount to a formal arrest. See *State v. Kipple*, 294 Ga. App. 420, 421-422 (1) (669 SE2d 185) (2008) (second-tier stop notwithstanding fact that officer ordered defendant out of the vehicle and conducted a pat-down search for personal safety). While Durrance correctly notes that he was not free to leave the scene at this point, he was not handcuffed or placed in the patrol car when questioned about the domestic disturbance or his consumption of alcohol. Under these circumstances, the trial court was authorized to find that a reasonable person would believe that his freedom of action was only temporarily curtailed pending further investigation. See *Waters*, supra, 306 Ga. App. at 116 (1). The officers were not required to provide Durrance *Miranda* warnings during the

8

preliminary investigation. Id.; see also *Brown v. State*, 299 Ga. App. 402, 404 (1) (683 SE2d 614) (2009).

(d) Durrance next contends that the trial court erred in denying his motion to suppress because the police officers lacked probable cause to arrest him for DUI. Again, we disagree.

> The test of probable cause requires merely a probability-less than a certainty but more than a mere suspicion or possibility. To arrest a suspect for driving under the influence, an officer need only have knowledge or reasonably trustworthy information that the suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely.

(Citation and punctuation omitted.) *Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004). "[P]robable cause to arrest for DUI-per se exists where an officer has a reasonable basis to believe that: (1) the suspect has, within the previous three hours, been in physical control of a moving vehicle; and (2) the suspect's current blood alcohol concentration is greater than 0.08 grams." (Citations and punctuation omitted.) *State v. Rish*, 295 Ga. App. 815, 817 (673 SE2d 259) (2009).

Although Durrance challenges the reliability of certain aspects of the field sobriety tests, the evidence clearly reveals that the officer had probable cause to arrest him for DUI even without the field sobriety tests. Significantly, the evidence reveals

9

that the officer smelled an odor of alcohol on Durrance and observed that he was sluggish and off-balance, his eyes were bloodshot and watery, and his speech was slurred. See *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996) ("Even in the absence of the field sobriety tests, the officer's observation that [the defendant] had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence.") (citations omitted). Additionally, an alco-sensor test administered to Durrance tested positive. See *Lenhardt v. State*, 271 Ga. App. 453, 454 (1) (610 SE2d 86) (2005) (police may use the results of alco-sensor tests in determining whether probable cause exists to arrest a motorist for DUI). Given this evidence, the officer had probable cause to arrest Durrance for DUI. See *Rish*, supra, 295 Ga. App. at 817. Therefore, we find no error in the trial court's denial of Durrance's motion to suppress.

2. Durrance contends that the trial court erred in allowing the State to conduct extensive cross-examination about the argument with his wife that preceded the DUI offense and admitting into evidence a photograph showing a hole he punched into a wall during that argument. We disagree.

The record demonstrates that Durrance testified about events leading to his decision to leave his home and drive his car to the police officers located at his

10

neighbor's house. Durrance specifically testified that he and his wife had been drinking, and that his wife left the house after they had an argument about a televised sports event. Durrance further testified that he decided to meet the police officers because his wife had not returned home following the argument, and he wanted to know if she had been involved in a car accident. During cross-examination, Durrance testified that the argument between him and his wife was a "little bit [] harsh." The State elicited further testimony and proffered a photograph showing that the argument became so heated that Durrance punched a hole in the wall. The trial court admitted the photograph over Durrance's relevance objection, finding that Durrance had opened the door to this line of questioning by testifying about events leading to his departure from his home. The State further questioned Durrance as to whether he hit his wife and threatened to kill her with a gun during the argument. Durrance objected to this questioning. Again, the trial court overruled Durrance's objection on the basis that Durrance opened the door based upon his prior testimony.

Pretermitting whether the trial court's rulings were erroneous, we find it highly unlikely that the challenged cross-examination and evidence contributed to the verdict in light of the overwhelming evidence of guilt. Notably, there was evidence that officers detected a strong odor of alcohol on Durrance; he admitted to drinking

11

vodka and beer prior to driving; he showed impairment before and during field sobriety tests and gave a positive alco-sensor test result; and he gave breath samples showing that he had blood alcohol concentration levels of 0.092 and 0.089, above the legal limit. "It is axiomatic that harm as well as error must be established by an appellant in order to secure a reversal of his conviction." (Citation and punctuation omitted.) *Newsome v. State*, 287 Ga. App. 356, 358 (2) (651 SE2d 764) (2007). Since Durrance has failed to show any harm arising from the alleged errors, we affirm his conviction.

3. Durrance also contends that the trial court imposed probation conditions that were unduly restrictive and not reasonably related to the DUI per se conviction. Specifically, Durrance challenges the condition that he complete a 24-week domestic violence intervention program, that he have no physical contact with his wife until he completed this program, and that he not drive without permission of the court during the term of probation.[5] We disagree.

"A trial court has broad discretion in sentencing to impose conditions reasonably related to the nature and circumstances of the offense and the

_____

[5] Durrance was sentenced to 12 months to serve 90 days in prison and the balance on probation.

12

rehabilitative goals of probation." (Citation and punctuation omitted.) *Harrell v. State*, 253 Ga. App. 440, 441 (1) (559 SE2d 155) (2002). Additionally,

> [i]n the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved. Probated and suspended sentences, upon reasonable conditions, have traditionally been used by trial judges in Georgia as effective tools of rehabilitation and serve a useful purpose in appropriate cases as an alternative to confinement.

(Citations and punctuation omitted.) *Pitts v. State*, 231 Ga. App. 9 (498 SE2d 534) (1998).

Here, Durrance's driver's license was suspended by operation of law under OCGA § 40-5-63 (a) (1), which provides for a 12-month suspension upon the first DUI conviction. Although Durrance could apply for possible reinstatement of his driver's license before the end of the suspension period, OCGA § 40-5-63 (a) (1), this does not change the fact that the license is suspended for at least 12 months. Accordingly, the condition that Durrance seek the court's permission to drive was within the requisite statutory parameters.

As for the other challenged conditions, Durrance has also failed to show that the trial court abused its discretion in requiring that he complete a domestic violence intervention program and that he refrain from having physical contact his wife until

13

he completed this program. Notably, the evidence shows that prior to the DUI offense, Durrance was involved in a domestic disturbance with his wife in which he punched a hole in the wall of their residence. Durrance's actions caused his wife to flee the home and call the police. During the subsequent police encounter, officers observed a pistol laying in the rear floorboard of Durrance's vehicle. The pistol was loaded and a round fully chambered ready to fire.

Based on these circumstances, the probation conditions that Durrance complete a domestic disturbance program and refrain from contacting his wife until completion of the program were reasonably related to the nature and circumstances of the DUI offense. Additionally, given the above evidence, as well as evidence that Durrance had been previously convicted of family violence battery, the trial court was authorized to conclude that the probation conditions would help rehabilitate Durrance by addressing his issues with anger management and alcohol combined, as well as help prevent further criminal activity. See *Payne v. State*, 273 Ga. App. 483, 488-489 (8) (615 SE2d 564) (2005) (in aggravated battery case, affirming conditions seeking to prevent excessive and unlawful drug and alcohol use during the period of probation since condition met objective of preventing further criminal activity); cf. *Tuttle v. State*, 215 Ga. App. 396, 397-398 (2) (450 SE2d 863) (1994) (probation

14

condition that precluded contact between defendant and the victim of crime bore a "reasonable relation to future criminal activity especially where a family relationship provided the opportunity for the past criminal conduct"). Durrance has not pointed to any express authority precluding the trial court from imposing the challenged probation conditions upon his conviction for DUI per se, and there is no indication in the record that the challenged conditions were unreasonable. See *Adams v. State*, 234 Ga. App. 696, 697 (3) (507 SE2d 538) (1998) (approving probation condition requiring defendant convicted of theft by taking to be screened and, if needed, treated for violent behavior and alcohol/drug dependency probation where no statutory authority precluded condition and no evidence presented that probation condition was unreasonable). Accordingly, Durrance's challenge to the probation conditions presents no basis for reversal.

*Judgment affirmed. Ray and Branch, JJ., concur.*