**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 31, 2024**

# In the Court of Appeals of Georgia

A24A0849. SMITH v. THE STATE.

BARNES, Presiding Judge.

Following a fatal automobile collision, Nancy Jane Smith pled guilty to homicide by vehicle in the second degree[1] and failure to yield right of way.[2] The trial court merged the failure-to-yield offense into the homicide-by-vehicle offense for

---

[1] See OCGA § 40-6-393 (c) ("Any person who causes the death of another person, without an intention to do so, by violating any provision of this title other than subsection (a) of Code Section 40-6-163, subsection (b) of Code Section 40-6-270, Code Sections 40-6-390 through 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the second degree when such violation is the cause of said death and, upon conviction thereof, shall be punished as provided in Code Section 17-10-3.").

[2] See OCGA § 40-6-71 ("The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.").

sentencing purposes and sentenced Smith under the First Offender Act[3] to 12 months of probation. Among other special conditions of probation, the trial court suspended Smith's driver's license for the length of the probation and required her to undergo an eye examination and report to the Department of Driver Services ("DDS") any changes in her vision since the last time her license was issued. Smith now appeals, contending that the trial court did not have the authority to impose the aforementioned special conditions of probation. We disagree and affirm.

A trial court's authority to set the terms and conditions of probation for misdemeanors[4] is found in OCGA §§ 17–10–3 and 42–8–35, but the conditions enumerated in those code sections are not exclusive. See *State v. Pless*, 282 Ga. 58, 61 (646 SE2d 202) (2007); *Grant v. State*, 176 Ga. App. 460, 460 (1) (336 SE2d 354) (1985).

> A trial judge has broad discretion in imposing conditions of probation, and in the absence of express authority to the contrary, there is no reason

---

[3] See OCGA § 42-8-60 et seq.

[4] The traffic offenses of homicide by vehicle in the second degree and failure to yield are misdemeanors. See OCGA §§ 40-6-1 (a) (violations of Chapter 6 of Title 40 – the Uniform Rules of the Road – are misdemeanors); 40-6-393 (c) (a person found guilty of homicide by vehicle in the second degree "shall be punished as provided in Code Section 17-10-3," which addresses punishment for misdemeanor offenses).

why any reasonable condition of probation should not be approved. Furthermore, there is a presumption that a sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party who asserts its impropriety.

(Citations and punctuation omitted.) *Oliver v. State*, 364 Ga. App. 828, 847 (8) (876 SE2d 34) (2022). See *Walker v. Brown*, 281 Ga. 468, 469-470 (1) (639 SE2d 470) (2007). Mindful of these principles, we turn to Smith's arguments on appeal.

1. Smith argues that the trial court lacked authority to suspend her driver's license as a condition of her probation because her plea of guilty under the First Offender Act was not a "conviction" under the statutory scheme for license suspensions set out in Title 5 of Chapter 40 of the Georgia Code.

A conviction of homicide by vehicle under OCGA § 40-6-393 results in the mandatory suspension of the defendant's driver's license. See OCGA §§ 40-5-53 (a), 40-5-54 (a) (1), 40-5-63 (a). Generally, a "conviction" for purposes of Georgia's Criminal Code is defined as "a final judgment of conviction entered upon a verdict or finding of guilty of a crime or upon a plea of guilty," OCGA § 16-1-3 (4), and entry of a guilty plea under the First Offender Act "is not a 'conviction' within the usual definition of that term." *Priest v. State*, 261 Ga. 651, 652 (2) (409 SE2d 657) (1991).

See OCGA §§ 42-8-60 (a) (allowing a first offender to enter a plea of guilty or nolo contendere and be placed on probation or incarcerated "without [the trial court] entering a judgment of guilt"); 42-8-60 (e) (when a first offender successfully completes his sentence, he "shall be exonerated of guilt and shall stand discharged as a matter of law"). But the general definition of "conviction" does not apply to Chapter 5 of Title 40, which addresses drivers' licenses; rather, as our Supreme Court has explained:

> The definition found in the general provisions relating to drivers' licenses gives the term "conviction" a very broad construction. OCGA § 40-5-1 (6). "Conviction" is defined to include "a forfeiture of bail or collateral deposited to secure a defendant's appearance in court, the payment of a fine, a plea of guilty, or a finding of guilt *on a traffic violation charge*, regardless of whether the sentence is suspended, probated or rebated." OCGA § 40-5-1 (6) (emphasis added). . . . [This] statutory definition does not carve out an exception for entries of pleas of guilty or the payment of a fine in a first offender situation. Nor does it require an adjudication of guilt. Thus, an entry of a guilty plea to a traffic violation charge is properly treated as a "conviction" under Chapter 5 of Title 40 even if it is given first offender treatment.

(Citations omitted.) *Priest*, 261 Ga. at 652 (2). Consequently, as we have held, entry of a guilty plea to the traffic violation charge of homicide by vehicle under the First

4

Offender Act, as occurred in this case, constitutes a "conviction" under the statutory scheme for mandatory license suspensions. See *Salomon v. Earp*, 190 Ga. App. 405, 406-407 (379 SE2d 217) (1989) (concluding that the defendant's driver's license was subject to mandatory suspension where he pled guilty as a first offender to homicide by vehicle; noting that the definition of "conviction" found in OCGA § 40-5-1 "does not carve out an exception for entries of pleas of guilty . . . in a first offender situation"),[5] cited with approval in *Priest*, 261 Ga. at 652 (2), and overruled in part on other grounds by *Pender v. Witcher*, 196 Ga. App. 856, 857 (397 SE2d 193) (1990). See also *Durrance v. State*, 319 Ga. App. 866, 872 (3) (738 SE2d 692) (2013) (noting that the defendant's "driver's license was suspended by operation of law under OCGA § 40-5-63 (a) (1)," and concluding that the probation condition requiring the defendant to "seek the court's permission to drive was within the requisite statutory parameters"). Therefore, contrary to Smith's argument, the trial court did not act inconsistent with statutory authority by suspending her driver's license after she pled guilty as a first offender to homicide by vehicle. See id.

---

[5] While OCGA § 40-5-1 has been amended several times since our decision in *Salomon*, the definition of "conviction" has not changed.

2. In a related argument, Smith contends that the trial court erred in suspending her driver's license as a condition of probation because only the DDS can suspend a driver's license.

As previously noted, absent express statutory authority to the contrary, there is no reason why any reasonable condition imposed for probation of a sentence by a trial court should not be approved. *Oliver*, 364 Ga. App. at 847 (8). And although the DDS has the authority to cancel, suspend, or revoke a driver's license under the circumstances set out in Article 3 of Chapter 5 of Title 40, those statutory provisions do "not purport to deprive a court of competent jurisdiction of the authority to suspend a driver's license as a condition of probation," and "[i]n our view, suspension of a defendant's driver's license after his conviction of a traffic-related offense is a reasonable condition of probation." *Brock v. State*, 165 Ga. App. 150, 150 (299 SE2d 71) (1983). See OCGA § 17-10-3 (d) (4) (in cases involving misdemeanor traffic offenses, the trial judge may impose probation "upon such terms and conditions as may be prescribed by the judge"); *Williams v. State*, 191 Ga. App. 217, 218 (1) (381 SE2d 399) (1989) ("Trial courts have the power to suspend a driver's license as a condition of a probated or suspended sentence for misdemeanor traffic

offense convictions."). See also *Durrance*, 319 Ga. App. at 872 (3) (concluding that trial court had the discretionary authority to require the defendant to seek the court's permission to drive as a condition of probation for his DUI conviction). Accordingly, the fact that the DDS was vested with statutory authority to suspend Smith's driver's license did not preclude the trial court from suspending her license as a condition of probation. See id.

3. Lastly, Smith asserts that the trial court lacked authority to require as a condition of probation that she undergo an eye examination and report to the DDS any changes in her vision since the last time her license was issued. According to Smith, "there is no statutory authority" for a trial court to order a defendant to submit to an eye exam and report any changes in vision to the DDS as a condition of probation.

By focusing on whether there was affirmative statutory authority for the trial court to impose the probation condition, Smith has not framed the issue correctly. We reiterate that "as part of the broad discretion vested in trial judges by the probation and suspension statutes in Georgia, the appellate courts will approve any reasonable condition imposed for probation of sentence by the trial court *in the absence of express authority to the contrary*." (Citations and punctuation omitted; emphasis supplied.)

*Hollie v. State*, 287 Ga. 389, 390 (1) (696 SE2d 642) (2010). See *State v. Pless*, 282 Ga. 58, 61 (646 SE2d 202) (2007) (asking whether was "any express authority which would preclude the trial court" from imposing a reasonable condition of probation). And, here, Smith has pointed to no such express statutory prohibition pertaining to eye exams and reporting to the DDS. Moreover, requiring Smith to undergo an eye examination and report any visual changes to the DDS was "reasonably related to the nature and circumstances of the offense and the rehabilitative goals of probation," *Johnson v. State*, 282 Ga. App. 258, 260 (2) (638 SE2d 406) (2006) (citation and punctuation omitted), where Smith, then 70 years old, failed to yield and turned left in front of a vehicle traveling in the opposite direction, the headlights of which she admittedly did not see, and caused a fatal crash. Indeed, OCGA § 17-10-3 (d) authorizes a trial court in cases involving misdemeanor traffic offenses to order "[r]eexamination by the [DDS] when the judge has good cause to believe that the convicted licensed driver is incompetent or otherwise not qualified to be licensed," OCGA § 17-10-3 (d) (1), or to impose "[p]robation or suspension of all or any part of a penalty upon such terms and conditions as may be prescribed by the judge,"

including the condition of "reporting periodically to the court or a specified agency." OCGA § 17-10-3 (d) (4).

Given the lack of express authority to the contrary and the reasonableness of the condition imposed by the trial court, Smith has failed to show that the court abused its discretion in imposing the eye examination and reporting of any changes to the DDS as a probation condition. Accord *Adams v. State*, 234 Ga. App. 696, 696 (3) (507 SE2d 538) (1998) (concluding, in case where the defendant was convicted of theft by taking, that the trial court had discretion to order that the defendant "be screened and, if needed, treated for violent behavior and alcohol/drug dependency as a condition of probation"); *Mann v. State*, 154 Ga. App. 677, 680 (4) (269 SE2d 863) (1980) (concluding that the requirement that the defendant "submit to a Psychological Stress Evaluator test every two months [was] a valid condition of his probation" for his conviction for making terroristic threats).

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*